RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0013P (6th Cir.)
File Name: 04a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

SHARON RANELL GRIMES,
    *Plaintiff-Appellant,*

    *v.*

    No. 01-6305

MAZDA NORTH AMERICAN
OPERATIONS; FORD MOTOR
COMPANY,
    *Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 97-00095—Thomas B. Russell, District Judge.

Argued: September 11, 2003

Decided and Filed: January 13, 2004

Before: MERRITT, GILMAN, and SUTTON, Circuit
Judges.

———————

## COUNSEL

**ARGUED:** Lance W. Turner, CARROLL LAW OFFICES,
Monticello, Kentucky, for Appellant. Charles E. English, Jr.,
ENGLISH, LUCAS, PRIEST & OWSLEY, Bowling Green,

Kentucky, for Appellees. **ON BRIEF:** Lance W. Turner,
Thomas E. Carroll, CARROLL LAW OFFICES, Monticello,
Kentucky, for Appellant. Charles E. English, Jr., David W.
Anderson, ENGLISH, LUCAS, PRIEST & OWSLEY,
Bowling Green, Kentucky, for Appellees.

———————

## OPINION

———————

MERRITT, Circuit Judge. This products liability action
presents an appeal from a jury verdict in favor of defendants
Mazda and Ford and against plaintiff Sharon Grimes after a
rollover truck accident in Kentucky left Grimes a
quadriplegic.[1] She alleges that two defects in the truck
caused her injuries: (1) the truck's design gave it a high
propensity to rollover under reasonably foreseeable
circumstances, and (2) the seat belt unlatched during the
accident. On appeal, Grimes contends that the district court
did not have proper jurisdiction over the claims, made
erroneous evidentiary rulings and gave erroneous jury
instructions on apportionment of damages. Specifically, she
raises the following issues: (1) the district court should have
remanded the case to the state court because it no longer had
subject-matter jurisdiction over the case when the
Commonwealth of Kentucky was added as a party because
(a) the court's diversity jurisdiction was destroyed and (b) the
Commonwealth is immune from suit under the Eleventh
Amendment; (2) the trial court erred in instructing the jury on
apportionment of fault (a) against the Commonwealth of
Kentucky because the Commonwealth is immune from

———————

[1]Although Grimes' lawyer, Thomas E. Carroll, also filed a Notice of
Appeal on behalf of Grimes' daughter and listed her in the style of the
case, the daughter was dismissed as a plaintiff below and she is not
mentioned in the appellate brief. Thus, we have no basis to adjudicate a
claim by the daughter.

liability and (b) against the driver of the truck because plaintiff's claim was an "enhanced injury" claim; and (3) the trial court erred in admitting evidence concerning (a) drug and alcohol use on the night of the accident by both plaintiff and the truck's driver and (b) other accidents involving similar vehicles for the purpose of establishing notice to defendants of a potential defect in the seat belt, but not for the purpose of establishing a design defect in the seat belt.

For the following reasons, we affirm the judgment of the district court.

## I.

### FACTS

Defendant Ford Motor Company is the parent corporation of defendant Mazda North American Operations. On July 21, 1995, plaintiff Sharon Grimes, 24 years old, was a passenger in a 1994 Mazda B2300 pickup truck. The truck was manufactured by Ford and distributed by Mazda.[2] It was owned by Norma Bergeron but was being driven that night by her daughter, Lisa Gutierrez. Grimes, Gutierrez, and another friend, April Shae Dyer, had been riding around in the truck before the accident. Grimes was drinking beer, and there is also evidence that she and Gutierrez may have used cocaine and smoked marijuana before the accident as well. Plaintiff and Gutierrez dropped off Dyer around midnight, and plaintiff then purchased more beer.

The accident occurred as Gutierrez and plaintiff were traveling on Highway 704 in Adair County, Kentucky, a rural area. Gutierrez had not driven on the road before that night.

---

[2]The Mazda B2300 pickup is essentially the same as the Ford Ranger Series pickups and much of the discussion at trial related to the Ford Ranger Series.

Gutierrez was driving about 50-55 mph, within the speed limit, when she came upon a curve in the road. The truck spun; and, as she tried to correct for the spin, she lost control of the truck. Gutierrez testified that her wheels may have gone off the pavement. The truck tipped over and slid on the passenger side, landing upside down. Gutierrez was suspended upside down in the truck by her seat belt, but she was unhurt. Grimes was upside down on the passenger side of the truck, her head against the roof and her legs against the windshield. As a result of the accident, she is a ventilator-dependent quadriplegic.

A team of two emergency medical technicians responded to the accident. Both testified that plaintiff was conscious and able to talk to them. The two responding technicians gave conflicting testimony at trial as to whether plaintiff was wearing her seat belt when they arrived. One of the responding emergency medical technicians testified that when he arrived at the accident scene, plaintiff, on the passenger side of the now-upside down truck, had her right arm entangled in the shoulder strap of a seat belt. The other responding technician testified that plaintiff was not entangled in her seatbelt, and he further testified that plaintiff told him that she had not been wearing her seatbelt. She also told him that she had consumed alcohol, cocaine and marijuana before the accident. Plaintiff also told the emergency room nurse that first treated her that she had not been wearing her seat belt and that she had consumed drugs and alcohol before the accident. Another nurse present in the emergency room when plaintiff arrived confirmed that plaintiff said she had not been wearing her seatbelt. In contrast to her statements the night of the accident, plaintiff testified at trial that she always wore her seat belt and was wearing it the night of the accident.

Also giving differing accounts of the situation at different times was the driver, Lisa Gutierrez. At the time of the accident, Gutierrez told the responding state trooper that both

she and plaintiff had been wearing their seat belts at the time of the accident. However, Gutierrez testified at trial that plaintiff was not entangled in her seat belt after the accident. In addition, the responding officer testified that he tested Gutierrez and she was not intoxicated at the time of the accident. Her blood alcohol level was consistent with her testimony that she had consumed one or two beers.

At trial, both sides presented expert testimony about the rollover propensities of the Ford Ranger/Mazda pickup truck. Defendants' expert testified that the likely cause of the rollover was that the left wheels of the truck left the roadway. The expert concluded that under the same conditions (curve in the road and driving at about 55 mph), many cars and light trucks would experience a rollover if the driver-side wheels left the road. Another expert for Ford/Mazda testified that this particular truck does not experience rollovers anymore frequently than other similar vehicles.

Plaintiff's expert testified that there was no evidence that the truck's tires had left the road, and it was his opinion that the truck was on the road when it flipped over. Another expert for the plaintiff testified that the type of suspension in this model of truck enhances the propensity to rollover because it raises the center of gravity. He testified that design changes to the wheel rims, use of smaller tires and switching to different shock absorbers would make the vehicle much less likely to rollover under dry, flat pavement conditions.

Both sides also presented expert testimony about whether the seat belt was defective, thereby causing it to unlatch during the rollover. Defendants presented two experts, both of whom testified that they did not find any marks on the passenger-side seat belt (plaintiff was in the front passenger seat) that would likely have been present if plaintiff had been wearing her seat belt at the time of the accident. One of defendant's experts testified that the condition of the passenger side seat belt indicates that it was in the "stowed" position at the time of the accident. The seat belt worn by the driver, Gutierrez, showed the expected signs of having been in use during the accident. Based on their findings, Ford/Mazda's experts concluded that plaintiff was not wearing her seat belt at the time of the accident.

Conversely, plaintiff presented expert testimony on "inertial unlatching," where the button that releases the belt is subjected to forces during the accident that cause the button to move to the position it would be in if pressed to unlatch by the user. One of plaintiff's experts, an engineer, testified that the bracket that anchored the seat belt to the frame of the truck was bent as if the seat belt had been in use during the accident. His opinion was that plaintiff had been wearing her seat belt at the time of the accident. Plaintiff's other seat belt expert testified that the wear on the seat belt in question was consistent with the belt having been in use for at least part of the rollover accident and his opinion was that the belt came unlatched during the rollover. Finally, a forensic pathologist testified that had plaintiff's seat belt been on and stayed on during the accident and if the truck had not rolled over, she would not have suffered such a serious injury.

The action was originally filed on May 28, 1996, in Adair (KY) Circuit Court against Lisa Gutierrez, the driver, Gutierrez's mother, Norma Bergeron, who owned the truck at the time of the accident, Larry Bergeron, who is Gutierrez's father, and Meridian Mutual Insurance Company. Larry Bergeron was dismissed shortly thereafter. An amended complaint was filed adding Mazda and Ford as defendants six weeks later. Plaintiff alleged theories of negligence, breach of warranty and strict liability. Defendants removed the case to the Western District of Kentucky based on diversity of citizenship, 28 U.S.C. § 1332. After learning that plaintiff had filed an action against the Commonwealth in the Kentucky Board of Claims alleging that her injuries were caused by the Commonwealth's negligence in maintaining, designing and constructing its roads and for failing to warn of

a known dangerous curve, defendants filed a third-party complaint pursuant to Federal Rule of Civil Procedure 14(a) against the Kentucky Transportation Cabinet, Department of Highways, seeking apportionment of fault and contribution under Kentucky law. Plaintiff moved to remand the case, arguing that joining the Commonwealth as a third-party defendant destroyed the federal court's diversity jurisdiction and violated the Eleventh Amendment to the United States Constitution. The district court denied the motion to remand and trial ensued.

After a 19-day trial, the jury returned a verdict in favor of defendants, finding that plaintiff was not wearing her seat belt at the time of the accident and that the truck was not defective. Plaintiff timely appealed that verdict. Because the jury found that plaintiff was not wearing her seat belt at the time of the accident, it did not make a finding concerning whether there was a defect in the seat belt. The jury also found that the truck was not defective and, following the instructions by the court and the verdict form, it answered no further questions as to that issue. Finally, because it found no liability on the part of defendants, no damages were awarded and the jury did not answer the questions on the verdict form regarding apportionment of damages.

## II.

### DISCUSSION

**A.  *Joining the Kentucky Department of Transportation as a Third-Party Defendant Did Not Destroy the Federal Court's Subject-Matter Jurisdiction***

Defendants impleaded the Kentucky Department of Transportation as third-party defendants after they discovered that plaintiff had brought a separate action against the Department in the Kentucky Court of Claims for failure to warn about an existing road hazard and thereby causing or

contributing to the accident. Under Kentucky law, only by bringing a third-party claim against the Department could defendants seek contribution from it for any damages awarded to plaintiff. Based on the joinder, plaintiff moved to remand the case to state court, arguing that joining the Department destroyed complete diversity and robbed the federal court of subject matter jurisdiction. The district court denied the motion, citing Kentucky law that requires that, in order to receive an apportionment instruction, a claim must be made against the alleged wrongdoer, even if there is no legal right to recover from that wrongdoer. As the district court noted, "the practice is to bring the alleged wrongdoer into the case by a third party complaint only to then have it dismissed. This sets up a possible apportionment instruction." D. Ct. Order, dated Mar. 8, 2000.

Plaintiff's argument that the complete diversity necessary for subject-matter jurisdiction under 28 U.S.C. § 1332 was destroyed when defendants brought a claim against the Commonwealth is without merit. Third-party claims by defendants for contribution against a third-party under Federal Rule of Civil Procedure 14(a)[3] generally do not require an independent jurisdictional basis. Instead, such claims fall within the court's supplemental jurisdiction if the impleaded defendant's actions share a "common nucleus of operative fact" with the case already before the court.

It is well settled that supplemental jurisdiction exists over a properly brought third-party complaint. *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155,

---

[3]Federal Rule of Civil Procedure 14(a) states:

At any time after the commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

1161 (10th Cir. 1990) ("A court has ancillary jurisdiction of a defendant's proper Rule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction, so long as the court has jurisdiction of the main claim between the original parties."); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1444, at 321 (2d ed. 1990) ("The cases on point almost all hold that defendant's claim against a third-party defendant is within the ancillary jurisdiction of the federal courts.").

The supplemental jurisdiction provision, 28 U.S.C. § 1367(b), states congressional intent to prevent original plaintiffs– but not defendants or third parties--from circumventing the requirements of diversity. See H.R. Rep. No. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (explaining that the purpose of § 1367(b) is to prevent "plaintiffs [from being able] to evade the jurisdictional requirement of 28 U.S.C. § 1332 by the simple expedient of naming initially only those defendants whose joinder satisfies section 1332's requirements and later adding claims not within original federal jurisdiction against other defendants who have intervened or been joined on a supplemental basis."). By contrast, "[b]ecause defendants are involuntarily brought into court, their [claims a]re not deemed as suspect as those of the plaintiff, who is master of his complaint." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998); *see also North American Stainless v. PNC Bank, Kentucky, Inc.*, No. 99-5730 at **2 n.4, 2000 WL 1256898 (6th Cir. July 13, 2000) (affirming case where district court exercised supplemental jurisdiction over third-party defendant that was not diverse from original plaintiff).

Here, the parties to the original action and the amended complaint were all diverse. The addition of the Commonwealth as a third-party defendant clearly arises from the "same nucleus of operative fact" because plaintiff had alleged that the accident was caused, at least in part, by

Kentucky's failure to adequately warn drivers about a known dangerous road. Accordingly, diversity was not destroyed when the Department was added as a third-party defendant and the district court properly retained subject-matter jurisdiction. True, as plaintiff notes, intervention or joinder of a non-diverse and *indispensable* party at some point after removal may defeat the court's diversity jurisdiction. But in this instance plaintiff argues exactly the opposite — that the Kentucky DOT was an improper party subject to Eleventh Amendment immunity and against whom fault could not be apportioned.

Plaintiff also contends that the fact that the Department was immune from suit under the Eleventh Amendment destroyed diversity jurisdiction when it became a party. The defendants raised the Eleventh Amendment as an affirmative defense, and this defense does not raise a jurisdictional question here for purposes of diversity. The district court properly dismissed the Department from the suit on Eleventh Amendment grounds, and, as stated in its order, recognized that defendants joined the Department solely to allow them to seek an instruction apportioning fault to the state if the evidence warranted.

### B. *Evidentiary Rulings*

### 1. *Evidence Relating to Drug and Alcohol Use*

Plaintiff claims that the district court erred in allowing the introduction of evidence of drug and alcohol use by Gutierrez, the driver, and plaintiff herself, on the night of the accident because such evidence was irrelevant. Evidence that plaintiff used drugs and alcohol on the night of the accident was relevant because testimony was given at trial that she told one of the responding emergency medical technicians and the emergency room nurse that she was not wearing her seatbelt that evening. Plaintiff testified at trial that she always wore her seatbelt and was wearing it at the time of the accident.

Alcohol or drug use before the accident could have impaired plaintiff's memory of the evening or caused her to not use a seatbelt even if she normally would use it. The district court therefore properly ruled that the evidence went to the weight of plaintiff's testimony about her seat belt use the night of the accident.

As to Gutierrez, the driver, the court ruled that the evidence of her drug and alcohol use on the night of the accident went to the credibility of her testimony describing the accident. As the driver of the truck and a defendant in the case, evidence that she was under the influence of drugs or alcohol was clearly relevant. It may have caused or contributed to the accident.

## 2. *Limiting the Purpose for Which Evidence of Similar Accidents Could Be Used*

Plaintiff introduced evidence from persons involved in other accidents where the seat belt latch in the vehicle was defective. The district court ruled that such evidence could be used only for the purpose of providing notice to the manufacturer of a possible defect, not as evidence that the product was defective. We believe that the court ruled correctly on this point. But, even if there were error, the error had no effect. The jury returned a special verdict that plaintiff was not wearing her seatbelt and that this, not design defect, may have been a cause of her injury.

### C. *Instructing the Jury on Apportionment of Fault*

Plaintiff's appeal of the apportionment instructions is moot because the jury found no liability against defendants. *See Adam v. J.B. Hunt Transport, Inc.*, 130 F.3d 219, 227 (6th Cir. 1997).

For the foregoing reasons, the judgment of the district court is affirmed.