[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15159
_____

D.C. Docket No. 3:11-cv-00510-TJC-JRK


PTA-FLA, INC.,
a Florida corporation,

Plaintiff,

versus

ZTE USA, INC.,
a New Jersey corporation,

Defendant-Appellee,

DAREDEVIL, INC.,
NTCH WEST-TENN, INC.,
NTCH-WA, INC.,

Defendants - Appellants.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 15, 2016)

Before MARCUS and DUBINA, Circuit Judges, and GOLDBERG,[*] Judge.

MARCUS, Circuit Judge:

In this appeal, we are asked to decide a number of jurisdictional questions arising from the district court's confirmation of an arbitration award. The case began as a contract dispute between two corporations -- PTA-FLA, Inc., and ZTE USA, Inc. -- commenced in the United States District Court for the Middle District of Florida. Shortly thereafter, three corporations affiliated with PTA-FLA filed similar cases against ZTE USA and its parent corporation, ZTE Corp., in several different federal district courts. All of the parties involved in these disputes participated in a consolidated arbitration proceeding that resulted in a zero-dollar award binding ZTE USA and the four affiliated plaintiff corporations. ZTE USA then moved the district court in the Middle District of Florida to reopen PTA-FLA's case, join the three other plaintiff corporations to the case, and, finally, to confirm the arbitrator's award against all four plaintiff corporations. But before the district court could rule on that motion, PTA-FLA -- the original plaintiff -- voluntarily dismissed its claims. The district court eventually confirmed the arbitral award against all parties, concluding that it had subject matter jurisdiction (grounded in diversity of citizenship) to confirm the award against the original

_____

[*] Honorable Richard W. Goldberg, Judge for the United States Court of International Trade, sitting by designation.

2

parties and supplemental jurisdiction to confirm the award against the later-joined parties despite PTA-FLA's voluntary dismissal and the reduction in the amount in controversy.

The three joined parties now appeal the confirmation of the award, claiming that the district court was without subject matter or supplemental jurisdiction. After careful review, and having the benefit of oral argument, we conclude that the district court properly exercised its jurisdiction and, accordingly, affirm.

I.

We lay out in some detail the complex procedural history surrounding this case in order to properly address the district court's power to entertain the matter. The appeal arises from a contract entered into by PTA-FLA, Inc., and ZTE USA, Inc., pursuant to which ZTE USA provided PTA-FLA with telecommunications equipment.  PTA-FLA, in turn, is affiliated with three other companies: Daredevil, Inc.; NTCH-WA, Inc.; and NTCH-West Tenn., Inc.  All four entities are owned and controlled by Eric Steinmann, and they operate together under the name "ClearTalk."  The ClearTalk entities each offer prepaid and flat-rate cell phone service to customers with poor credit or who otherwise cannot open accounts with major cell phone providers.  While only PTA-FLA's contract was originally relevant in this case, each of the ClearTalk entities entered into a similar contract

3

with ZTE USA that was governed by a Master Supply Agreement ("MSA")
identical to the one governing PTA-FLA's contract.

PTA-FLA eventually discovered that the telecommunications equipment
provided by ZTE USA was defective, lacking in functionality, or limited in
functionality. PTA-FLA contacted ZTE USA as required by the MSA's dispute-
resolution provision, but the parties were not able to resolve the dispute through
"good faith senior level negotiations." If the negotiations failed, the MSA
provided that

> either party may . . . initiate an arbitration proceeding which shall be
> administered by the International Centre for Dispute Resolution of the
> American Arbitration Association ("AAA") in accordance with its
> International Arbitration Rules. The place of arbitration shall be
> Jacksonville, Florida. The language of the arbitration shall be English. The
> parties to this Agreement expressly agree that any order or award of the
> arbitrator shall be final and binding and may be enforced in any court of
> competent jurisdiction.

Despite this provision, PTA-FLA sued ZTE USA in state court (the Fourth Judicial
Circuit in and for Duval County, Florida) seeking damages for alleged breach of
warranty, breach of the covenant of good faith and fair dealing, rescission, and
fraud in the inducement.[1] Similar suits were filed across the country by the other
ClearTalk entities, including suits by Daredevil, NTCH-WA, NTCH-West Tenn.,

---

[1] PTA-FLA filed a separate suit against the parent company, ZTE Corp., in the United States
District Court for the Middle District of Florida over a year later. That suit was dismissed
without prejudice as a result of the proceedings in this case. See PTA-FLA, Inc. v. ZTE Corp.,
No. 3:12-cv-01003 (M.D. Fla. filed Sept. 11, 2012).

4

and Steinmann against both ZTE USA and ZTE Corp.  Ultimately, ten suits were filed in six different jurisdictions.[2]

ZTE USA removed the original suit from state court to the United States District Court for the Middle District of Florida, grounding jurisdiction on the diverse citizenship of the parties.  ZTE USA then moved to compel arbitration. The district court granted that motion, and stayed its case pending the resolution of the arbitration proceedings.  The other ClearTalk cases were all referred to the same arbitration proceeding and either dismissed or stayed pending the resolution. The arbitration proceeding went forward as a single unified proceeding that bound ZTE USA, PTA-FLA, Daredevil, NTCH-WA, and NTCH-West Tenn.  The arbitrator, former Florida Supreme Court Chief Justice Major B. Harding, noted that "[t]he entities ha[d] been collectively referred to by counsel throughout the arbitration as ClearTalk."

After considering evidence presented over ten days, the arbitrator determined that "[t]he ClearTalk entities shall take nothing from this action and the

---

[2] In chronological order, they are: PTA-FLA, Inc. v. ZTE USA, Inc., No. 3:11-cv-00510 (M.D. Fla. filed May 20, 2011) (this case); Daredevil, Inc. v. ZTE USA, Inc., No. 4:11-cv-01054 (E.D. Mo. filed June 10, 2011); NTCH-West Tenn., Inc. v. ZTE USA, Inc., No. 1:11-cv-01169 (W.D. Tenn. filed June 13, 2011); PTA-FLA, Inc. v. ZTE USA, Inc., No. 3:11-cv-01605 (D.S.C. filed July 1, 2011); Steinmann v. ZTE USA Inc., et al., No. 5:11-cv-01578 (C.D. Cal. filed Oct. 3, 2011); Daredevil, Inc. v. ZTE Corp., No. 4:12-cv-01166 (E.D. Mo. filed June 28, 2012); NTCH-West Tenn., Inc. v. ZTE Corp., No. 1:12-cv-01172 (W.D. Tenn. filed Aug. 2, 2012); NTCH-WA, Inc. v. ZTE Corp., No. 2:12-cv-03110 (E.D. Wa. filed Aug. 24, 2012); PTA-FLA, Inc. v. ZTE Corp., No. 3:12-cv-01003 (M.D. Fla. filed Sept. 11, 2012); PTA-FLA, Inc. v. ZTE Corp., No. 3:12-cv-02616 (D.S.C. filed Sept. 12, 2012).

Respondents . . . owe nothing in regard to" the claims of fraud, fraudulent inducement, breach of contract, breach of warranty, or overpayment. The arbitrator also decided that "Respondents shall take nothing from this action and Claimants known as ClearTalk owe nothing in regard to" ZTE's claim for damages due to nonpayment. The decision referred to the ClearTalk entities as a single unit; it did not specify different conclusions or awards concerning the independent component entities that made up ClearTalk.

On the same day the arbitrator issued his award, ZTE USA returned to the District Court in the Middle District of Florida and moved to reopen the case, join the other parties to the arbitration (Daredevil, NTCH-WA, NTCH-West Tenn., and Steinmann), confirm the final arbitral award as to all parties, and enter a final judgment. PTA-FLA moved the district court to stay the case pending a request that the arbitrator correct an ambiguity as to which parties were bound by the award. Daredevil, NTCH-WA, and NTCH-West Tenn. entered limited appearances to oppose ZTE USA's motion to confirm for similar reasons, and Steinmann objected to joining the suit at all. The arbitrator corrected the award on March 11, 2014, and clarified that the award involved only ZTE USA, not ZTE Corp., because Steinmann's claims were the only claims asserted against ZTE Corp. and they had been dismissed.

6

While the motion to confirm was pending, ZTE USA sought to transfer all the related cases to the Judicial Panel for Multidistrict Litigation (JPML) for consolidation.  The district court ordered the case stayed pending the JPML's order.  Then, with both ZTE USA's motion to confirm and the consolidation request pending, PTA-FLA voluntarily dismissed its claims in the original Middle District of Florida proceeding.  Because "there [was] no monetary award to confirm and PTA-FLA [did] not seek to vacate the Award," PTA-FLA saw it as "appropriate to terminate the action forthwith" "due to the lack of further justiciable controversy."  After the JPML denied ZTE USA's motion to transfer, the district court requested briefing and conducted a hearing on PTA-FLA's voluntary dismissal.

The district court ultimately decided that PTA-FLA could voluntarily dismiss its own claims against ZTE USA.  The court also dismissed ZTE Corp. from the case because the arbitration award did not address any claims against ZTE Corp.  However, it decided that the voluntary dismissal did not extinguish ZTE USA's motion to confirm and thus reopened ZTE USA's case, joining Daredevil, NTCH-WA, and NTCH-West Tenn. as parties.[3]  Eight months after the dismissal,

---

[3] Steinmann was also joined as a party, but a subsequent order denied the motion to confirm as to Steinmann because he was the only party who had been permitted to bring claims against ZTE Corp. in the arbitration.  The court allowed him to pursue a separate action in California.  In that proceeding, ZTE USA and ZTE Corp. moved to confirm the arbitration award and Steinmann moved to vacate the award, but the district court stayed the proceedings pending the resolution of this appeal.  See Steinmann v. ZTE Corp., No. 5:11-cv-1578, D.E. 88 (C.D. Cal. June 9, 2014).

the district court entered another order rejecting the Joined Parties' arguments that it had improperly exercised subject matter and supplemental jurisdiction.

The district court confirmed the arbitration award as to ZTE USA, PTA-FLA, Daredevil, NTCH-WA, and NTCH-West Tenn. The latter three parties, collectively referred to as the "Joined Parties," have appealed the confirmation on jurisdictional grounds, claiming that the district court did not have subject matter or supplemental jurisdiction to confirm the award.

## II.

We review rulings on subject-matter jurisdiction de novo. Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc., 431 F.3d 1320, 1324 (11th Cir. 2005). "The exercise of supplemental jurisdiction is left to the discretion of the district court; we review for an abuse of discretion." Beck v. Prupis, 162 F.3d 1090, 1099 (11th Cir. 1998).

At oral argument, counsel for the Joined Parties conceded that the district court had subject matter jurisdiction to confirm the arbitration award against the original parties, PTA-FLA and ZTE USA. Even without this concession, the district court properly reached that conclusion.

## A.

It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are "empowered to hear only those cases within the judicial

8

power of the United States as defined by Article III of the Constitution" and that have been entrusted to them by a jurisdictional grant authorized by Congress. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "Congress has the constitutional authority to define the jurisdiction of the lower federal courts and, once the lines are drawn, limits upon federal jurisdiction . . . must be neither disregarded nor evaded." Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (quotation and citation omitted). And because the Constitution unambiguously confers this jurisdictional power to the sound discretion of Congress, federal courts "should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction." Victory Carriers, Inc. v. Law, 404 U.S. 202, 212 (1971).

A defendant may remove a civil action filed in a state court to the federal district court for the district in which the action is pending if the district court would have had jurisdiction over the suit. 28 U.S.C. § 1441(a). The "district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). The Federal Arbitration Act (FAA), Pub. L. No. 68-401, 43 Stat. 883 (1925), codified as amended at 9 U.S.C. § 1 et seq., is "something of an anomaly in the field of

federal-court jurisdiction" because while it "creates a body of federal substantive law . . . it does not create any independent federal-question jurisdiction." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983). Instead, the FAA requires an independent jurisdictional foundation. See Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581–82 (2008); Peebles, 431 F.3d at 1325 ("The Federal Arbitration Act does not confer subject matter jurisdiction . . . nor does it create independent federal question jurisdiction. Independent grounds for subject matter jurisdiction must be demonstrated.") (citation omitted).

Because the FAA does not contain its own statutory grant of jurisdiction and does not create federal question jurisdiction, the district court must have diversity jurisdiction over the original parties to entertain prearbitration proceedings. Under 28 U.S.C. § 1332(a), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Notably, diversity jurisdiction is measured at the time the action is filed. See Grupo Dataflux v. Atlas Glob. Grp., LP, 541 U.S. 567, 571 (2004). There is no dispute that the United States District Court for the Middle District of Florida had diversity jurisdiction over the parties at the time the cause was removed to federal court, and, indeed, PTA-FLA has never challenged the removal as being improper. PTA-FLA is a Florida corporation with its principal place of business in South

Carolina, and ZTE USA is a New Jersey corporation with its principal place of

business in Texas.  The arbitration took place in Jacksonville, Florida, within the

Middle District of Florida.  And the amount in controversy stated in the complaint

was $3.8 million, the full value of the telecommunications-equipment contract.

Plainly, the district court had the power to entertain the complaint and to compel

arbitration.

B.

Diversity jurisdiction gave the district court not only the power to compel

arbitration, but also the power to confirm the resulting arbitration award.  It is by

now undisputed that "when a federal district court grants a motion to compel

arbitration it retains jurisdiction to confirm or vacate the resulting arbitration award

under 9 U.S.C. §§ 9–10."  TranSouth Fin. Corp. v. Bell, 149 F.3d 1292, 1297 (11th

Cir. 1998); see also Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275–76 (1932)

("[W]here the court has authority under the [FAA] . . . to make an order for

arbitration, the court also has authority to confirm the award or to set it aside.").

Indeed, Section 9 of the FAA reads, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court
> shall be entered upon the award made pursuant to the arbitration, and shall
> specify the court, then at any time within one year after the award is made
> any party to the arbitration may apply to the court so specified for an order
> confirming the award, and thereupon the court must grant such an order
> unless the award is vacated, modified, or corrected as prescribed in sections
> 10 and 11 of this title.  If no court is specified in the agreement of the
> parties, then such application may be made to the United States court in and

11

for the district within which such award was made.  Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.

9 U.S.C. § 9.  This provision "carries no hint of flexibility.  On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected.'"  Hall Street Assocs., 552 U.S. at 587 (quoting 9 U.S.C. § 9).  The Middle District of Florida is the situs of the arbitration proceedings, and notice was properly served on the Joined Parties.  Quite simply, because the district court had the power to compel arbitration, it retained the power to confirm the arbitration award against the original parties.

Moreover, it is also abundantly clear that the district court's jurisdiction to entertain the motion to confirm was unaffected by the reduced amount in controversy.  Again, diversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal.  See Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1306 n.1 (11th Cir. 2001); Grupo Dataflux, 541 U.S. at 570 ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824)).  The Supreme Court has explicitly noted that even when a plaintiff, "after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount," that decrease "does not deprive the district court of jurisdiction."  St.

12

Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938); see also

Poore v. American-Amicable Life Ins. Co. of Texas, 218 F.3d 1287, 1291 (11th

Cir. 2000) ("[E]vents occurring after removal which may reduce the damages

recoverable below the amount in controversy requirement do not oust the district

court's jurisdiction."), overruled in part on other grounds by Alvarez v. Uniroyal

Tire Co., 508 F.3d 639, 640–41 (11th Cir. 2007).  Thus, the fact that ZTE USA

sought to confirm a zero-dollar arbitration award did not strip the district court of

jurisdiction.  The district court had the power to compel arbitration on account of

diversity jurisdiction, and it had the power to confirm the award, regardless of any

subsequent change to the amount in controversy.

C.

Nor did PTA-FLA's voluntary dismissal of its action divest the court of

jurisdiction to confirm the award.  The district court disagreed with the Joined

Parties and found that ZTE USA's motion to confirm was "similar to a

counterclaim," which PTA-FLA could not unilaterally dismiss.  We are not

persuaded by this rationale.  But we affirm the district court's jurisdictional

determination because the motion to confirm was in the nature of a collateral claim

in an action over which the district court undeniably exercised diversity

jurisdiction.

13

1.

Voluntary dismissal is governed by Fed. R. Civ. P. 41(a).  Pursuant to this rule, voluntary dismissal may occur with or without a court order:

(1) *By the Plaintiff.*

(A) *Without a Court Order.* . . . [A] plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

. . .

(2) *By Court Order; Effect.*  Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.  Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a).  As the former Fifth Circuit has noted, "Rule 41(a)(1) means precisely what it says."  Pilot Freight Carriers, Inc. v. Int'l Bhd. of Teamsters, 506 F.2d 914, 916 (5th Cir. 1975).[4]  According to the plain text of Rule 41(a)(1)(A)(i), only the filing of an answer or a motion for summary judgment terminates a plaintiff's ability to voluntarily dismiss its claims without a court order.

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

14

As the district court correctly noted, a motion to confirm an arbitral award is neither an answer nor a motion for summary judgment.  If the drafters of Rule 41 had intended to include pleadings of similar nature to answers and motions for summary judgment, they could easily have done so.  Indeed, the federal courts have regularly found that various other motions and pleadings are insufficient to foreclose plaintiffs from voluntarily dismissing their claims.  See, e.g., Swedberg v. Marotzke, 339 F.3d 1139, 1142 (9th Cir. 2003) (determining that a motion to dismiss is not a motion for summary judgment for purposes of Rule 41); Hamilton v. Shearson-Lehman American Exp., Inc., 813 F.2d 1532, 1534–35 (9th Cir. 1987) (determining that a motion to stay the case and compel arbitration is not an answer or motion for summary judgment for purposes of Rule 41); Merit Ins. Co. v. Leatherby Ins. Co., 581 F.2d 137, 142–43 (7th Cir. 1978) (same); American Soccer Co., Inc. v. Score First Enterprises, a Div. of Kevlar Indus., 187 F.3d 1108, 1111–12 (9th Cir. 1999) (determining that a motion for and hearing on a preliminary injunction is not a motion for summary judgment for purposes of Rule 41); Pilot Freight Carriers, 506 F.2d at 916–17 (same).  In the same way, a motion to confirm will not suffice.

The text is also clear in still another way: Rule 41 "speaks of voluntary dismissal of 'an action,' not a claim." State Treasurer of State of Michigan v. Barry, 168 F.3d 8, 19 n.9 (11th Cir. 1999) (Cox, J., specially concurring) (quoting

15

Fed. R. Civ. P. 41(a)(1)).  A district court cannot dismiss some claims while leaving others pending.  See Taylor v. Brown, 787 F.3d 851, 857 (7th Cir. 2015) ("Rule 41(a) does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action' -- which is to say, the whole case.") (quotations omitted). Thus, if the district court thought PTA-FLA's voluntary dismissal was effective to dismiss its claims, it should have dismissed the entire action -- including the motion to confirm.  Instead, the district court dismissed PTA-FLA's claims but retained ZTE USA's motion to confirm, calling it "similar to a counterclaim."  It determined that PTA-FLA's voluntary dismissal did not terminate the motion to confirm, because Rule 41(a)(1)(A)(i) "does not give PTA-FLA the authority to unilaterally dismiss someone else's claim."

We are unpersuaded for two reasons.  First, a motion to confirm is not a counterclaim.  It seeks nothing from the opposing party; it does not assert new claims; and it does not rebut claims that were previously made.  Moreover, even if the analogy were proper, Rule 41(a)(1) -- which governs voluntary dismissal by the plaintiff -- does not discuss counterclaims at all.  Counterclaims are mentioned only in Rule 41(a)(2), which governs voluntary dismissal by court order.  That provision says:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the

16

defendant's objection only if the counterclaim can remain pending for independent adjudication.

Fed. R. Civ. P. 41(a)(2) (emphasis added).  Mirroring the last sentence quoted above, the district court concluded that PTA-FLA could not dismiss its action over ZTE USA's objection unless the motion to confirm remained pending.  But Rule 41(a)(2) addresses voluntary dismissal by court order.  Voluntary dismissal by the plaintiff, under Rule 41(a)(1), is expressly excepted from Rule 41(a)(2).  And Rule 41(a)(1) does not require that counterclaims remain in contention.  Thus, whether a motion to confirm is "similar to a counterclaim" is of no moment in this case because PTA-FLA voluntarily and properly dismissed its claims under Rule 41(a)(1)(A)(i).

2.

Nevertheless, the district court's conclusion that the motion to confirm survived PTA-FLA's voluntary dismissal was correct for an independent reason: since the district court had the power to preside over the prearbitration proceedings, it also had independent jurisdiction to hear claims that were collateral to the proceeding.  A motion to confirm is one such collateral claim.

It is long and well established "that a federal court may consider collateral issues after an action is no longer pending."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990); see also Putnam v. Williams, 652 F.2d 497, 502 (5th Cir. 1981) ("[W]hen the jurisdiction of the court has attached to an ancillary claim, it

17

will not be ousted by the subsequent dismissal of the main suit on the merits.").  A collateral or ancillary issue is a claim that, on its own, "do[es] not invoke an independent basis of subject matter jurisdiction" but that is "so closely related to a case properly in federal court as to justify the conclusion that they are all part of a single case or controversy."  Charles Alan Wright & Arthur R. Miller, 13 Federal Practice and Procedure § 3523 (3d ed. 2004); see also Morrow v. District of Columbia, 417 F.2d 728, 740 (D.C. Cir. 1969) (noting that an ancillary matter "arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter").  Collateral claims must "hav[e] a factual and logical dependence on the primary lawsuit," and the "primary lawsuit must contain an independent basis for federal jurisdiction."  Peacock v. Thomas, 516 U.S. 349, 355 (1996) (quotation and citation omitted).

Adjudication of a collateral issue is an "independent proceeding[ ] supplemental to the original proceeding and not a request for a modification of the original decree."  Cooter & Gell, 496 U.S. at 395 (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 170 (1939)).  Thus, the resolution of a collateral issue "does not signify a district court's assessment of the legal merits" of the case.  Id. at 396.  The ancillary nature of such a proceeding is further evidenced by the fact that it "can be initiated and decided after the case on which it is based is finally resolved and no longer pending."  Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329

18

F.3d 805, 808 n.6 (11th Cir. 2003).  Preserving jurisdiction over collateral issues is "consistent with the policy and purpose of Rule 41(a)(1), which was designed to limit a plaintiff's ability to dismiss an action."  Cooter & Gell, 496 U.S. at 397.  Using this reasoning, the Supreme Court noted that even after an action is dismissed for lack of jurisdiction, district courts may still award costs and attorney's fees and may still consider criminal contempt charges.  Id. at 396.

Confirmation of an arbitral award is precisely such a collateral proceeding.  ZTE USA's motion to confirm existed solely because the district court compelled arbitration.  It arose from the same transaction that formed the basis of the main proceeding, over which the district court properly exercised diversity jurisdiction.  By requesting confirmation, ZTE USA did not seek a "judgment on the merits of [the] action," id., nor did it request a modification of the arbitrator's final decree.  The motion was filed after the merits of the underlying action were fully and completely resolved through arbitration.  ZTE USA merely sought confirmation of the arbitral award -- exactly as it was issued by the arbitrator -- so that the award would be finalized and protected against challenges in other courts.  The district court thus retained jurisdiction over the motion to confirm.

III.

A.

The district court also found that it had supplemental jurisdiction to confirm the arbitration award concerning the Joined Parties. The Joined Parties appealed this decision, arguing that they fall under the exception to supplemental jurisdiction stated in 28 U.S.C. § 1367(b) and thus should have been excluded from the confirmation. They reach this conclusion by characterizing ZTE USA as a party plaintiff seeking an order against the Joined Parties as defendants. These arguments are unavailing. The district court correctly asserted supplemental jurisdiction over the Joined Parties and confirmed the arbitration award against them.

In enacting § 1367, Congress heeded advice from the Federal Courts Study Committee ("Committee"), a legislatively created body that included a mix of judges, senators, congressmen, and lawyers. See Federal Courts Study Act, Pub. L. No. 100-702, 102 Stat. 4642, 4644–45 (1988). In its final report, the Committee recommended that Congress "authoriz[e] federal courts to hear any claim arising out of the same 'transaction or occurrence' as a claim within federal jurisdiction, including claims that require the joinder of additional parties." Federal Courts Study Committee, Report of the Federal Courts Study Committee 560 (1990) ("Committee Report"). As the Committee noted, "this language is broad enough to encompass pendent claim, pendent party, and ancillary jurisdiction. The proposal

20

thus supplies a general background rule favoring supplemental jurisdiction." Id. Congress adopted the Committee's proposal with slight modifications in what is now § 1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a); see also H.R. Rep. No. 101-734, at 27 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6873 (noting that § 1367 implements the Committee's recommendations).

The Supreme Court has similarly acknowledged § 1367(a) as "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558 (2005).  In particular, "[t]he last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties." Id.

In this case, the district court had original jurisdiction by virtue of diversity; under the TranSouth rule, it retained jurisdiction over the motion to confirm. TranSouth Fin. Corp., 149 F.3d at 1297.  While the Joined Parties were not parties

21

to the original suit, the claims in which they are involved clearly arise from the same arbitration proceeding and award that ZTE USA sought to confirm.  Like the district court, we have "no difficulty concluding that review of the arbitration between ZTE USA and at least the corporate objectors arise out of a common nucleus of operative facts as the dispute between ZTE USA and PTA-FLA."  Each of the ClearTalk entities' claims against ZTE USA originates from similar arrangements that were governed by nearly identical MSAs.  Their claims thus "arise from the same facts, [and] involve similar occurrences, witnesses or evidence" as PTA-FLA's claims, so they "form part of the same case or controversy."  Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996); see also Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1566 ("By its language, section 1367(a) authorizes a court to hear supplemental claims to the full extent allowed by the 'case or controversy' standard of Article III.").  The statute also plainly allows "the joinder or intervention of additional parties" with sufficiently related claims, such as the Joined Parties in this case.  Thus, the district's courts exercise of supplemental jurisdiction was proper.

Nor is it of any legal significance that the claims involving the Joined Parties do not independently satisfy the amount-in-controversy requirement.  Because "the threshold requirement of § 1367(a) is satisfied in cases . . . where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy,"

22

Exxon Mobil, 545 U.S. at 566, confirmation of the award as to the Joined Parties cannot be denied on this ground.

B.

The Joined Parties argue, nevertheless, that they qualify for the exception to supplemental jurisdiction found in 28 U.S.C. § 1367(b).  Subsection (b) reads this way:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

The Joined Parties claim that ZTE USA "is most aptly described as the plaintiff in this case," since it is seeking to confirm the award against them.  But ZTE USA, the defendant in the original action, does not become a plaintiff by merely asserting a claim against the Joined Parties.  See Charles Alan Wright & Arthur R. Miller, 13D Federal Practice and Procedure § 3567.2 (3d ed. 2004) ("[I]t is clear that a defendant or third-party defendant does not become a 'plaintiff' for purposes of § 1367(b) by asserting a claim.").  ZTE USA sought to add the Joined Parties to confirm an arbitration award against them; PTA-FLA originally brought no claims against the Joined Parties and the Joined Parties assert no claims against

23

PTA-FLA.  Thus, ZTE USA could be considered a "plaintiff" only in the sense of a third-party plaintiff bringing a claim against the Joined Parties as third-party defendants.  See Fed. R. Civ. P. 14(a)(2).

However, while this Court has not addressed the question of precisely which plaintiffs are excepted from jurisdiction under § 1367, every appellate court that has done so is in agreement.  The First, Second, Third, Fourth, Fifth, and Sixth Circuits have each concluded that "claims by plaintiffs" in § 1367(b) refers to claims by only the original plaintiffs to the action -- not third-party plaintiffs, counter plaintiffs, or cross plaintiffs.[5]  The Seventh and Tenth Circuits have also favorably mentioned this interpretation, although those courts have not fully engaged with the argument and have not made affirmative conclusions on the

---

[5] See, e.g., Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 73 (1st Cir. 2013) ("'[P]laintiff' in section 1367(b) refers to the original plaintiff in the action, and not to a defendant that also is a third-party plaintiff."); Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 726–27 (2d Cir. 2000) ("Significantly, § 1367(b) reflects Congress'[s] intent to prevent original plaintiffs -- but not defendants or third parties -- from circumventing the requirements of diversity."); Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 160 (3d Cir. 1995) ("The plain language of § 1367(b) limits supplemental jurisdiction over claims of plaintiffs . . . and of parties who join or intervene as plaintiffs. . . . The section has little to say about defendants."); United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 492 (4th Cir. 1998) ("[T]he limitation of § 1367(b) applies only to plaintiffs' efforts to join nondiverse parties."); State Nat'l Ins. Co. Inc. v. Yates, 391 F.3d 577, 580 (5th Cir. 2004) ("'[P]laintiff' in § 1367(b) refers to the original plaintiff in the action -- not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party-plaintiff."); Grimes v. Mazda North American Operations, 355 F.3d 566, 572 (6th Cir. 2004) ("The supplemental jurisdiction provision, 28 U.S.C. § 1367(b), states congressional intent to prevent original plaintiffs -- but not defendants or third parties -- from circumventing the requirements of diversity.").

24

issue.[6]  Wright and Miller similarly observe that § 1367(b) "does not apply to claims asserted by any party other than the plaintiff"; the provision therefore "plays no role in claims, such as counterclaims and crossclaims, asserted by defendants or third-party defendants."  Wright & Miller, 13D Federal Practice and Procedure § 3567.2.  We join our sister circuits on this point.  The claims at issue are not "claims by plaintiffs against persons made parties" and do not fall under the exception found in § 1367(b); the district court properly exercised supplemental jurisdiction over them in this case.

Furthermore, any resort to legislative history would not alter this analysis. The Joined Parties say that exercising supplemental jurisdiction in this case "would fly in the face of congressional intent to heighten suspicion of those that initiate an action to circumvent federal jurisdiction restrictions."  But the legislative history reveals that Congress was wary of gamesmanship on the part of plaintiffs, not defendants -- the drafters were concerned about "encourag[ing] plaintiffs to evade the jurisdictional requirement of 28 U.S.C. § 1332 by the simple expedient of naming initially only those defendants whose joinder satisfies section 1332's requirements and later adding claims not within original federal jurisdiction against other defendants who have intervened or been joined on a supplemental basis."  H.R. Rep. No. 101-

---

[6] See Aurora Loan Servs., Inc. v. Craddieth, 442 F.3d 1018, 1025 (7th Cir. 2006) (citing State Nat'l Ins. Co. and Viacom); Price v. Wolford, 608 F.3d 698, 703–04 (10th Cir. 2010) (citing Development Finance Corp. and Wright & Miller § 3567.2).

734, at 29 (emphasis added).  ZTE USA, the original defendant, was seeking to join the parties in this case; any concern about gamesmanship is absent here.

## C.

Finally, we add these thoughts.  To the extent that prudential concerns bear on the issue at all, they yield the same result.  We think it indisputable that declining to exercise supplemental jurisdiction in this case would harm judicial economy and risk producing conflicting judgments.  Section 1367 was enacted with precisely these concerns in mind.  As the Committee expressly observed, "[s]upplemental jurisdiction facilitates the joinder in litigation of all claims arising out of the same transaction.  The benefits in judicial economy and in party and witness convenience are apparent."  Committee Report at 547 (emphasis added).  The legislative history behind § 1367 reflects similar considerations: Congress noted that "[s]upplemental jurisdiction has enabled federal courts and litigants to take advantage of the federal procedural rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with related matters, usually those arising from the same transaction, occurrence, or series of transactions or occurrences."  H.R. Rep. No. 101-734, at 28.  By allowing consolidation in this manner, "the efficiency and convenience are obvious."  Wright & Miller, 13D Federal Practice and Procedure § 3567.

26

These concerns are especially salient in this case, in which one unified, streamlined arbitration award bound five parties that had originally been involved in ten lawsuits across six jurisdictions. Absent the vehicle of supplemental jurisdiction, the district court in the Middle District of Florida would have found itself only able to confirm the arbitration award as to PTA-FLA. ZTE USA would then have been required to seek separate confirmation as to Daredevil, NTCH-WA, and NTCH-West Tenn. in the ongoing parallel proceedings in the Eastern District of Missouri, the Eastern District of Washington, and the Western District of Tennessee, respectively. Aside from the harm to judicial economy and the obvious increase in resources that these additional proceedings would have caused, seeking confirmation of the same arbitral award in four different tribunals would entail risking inconsistent judgments in the same operative cause of action. Indeed, another one of the ClearTalk entities, NTCH-West Tenn., has already moved to vacate the arbitration award in its ongoing case now pending in the Western District of Tennessee. See NTCH-West Tenn., Inc. v. ZTE USA, Inc., No. 1:11-cv-01169, DE 134 (W.D. Tenn. Sept. 9, 2014).[7] While vacatur of the award as to only one party might not create a problem if the award actually was divisible, this award was the result of a unified, consolidated arbitration in which the arbitrator did not draw different conclusions as to the various ClearTalk entities. By

---

[7] That case, along with NTCH-West Tenn.'s suit against ZTE Corp., was stayed pending the

similarly streamlining the confirmation process, the district court undoubtedly saved substantial judicial resources and avoided potentially conflicting judgments.

In sum, the district court had diversity jurisdiction over this case upon its removal from state court.  It had the power to compel arbitration, and with that power came the power to confirm the resulting arbitration award.  Jurisdiction was unaffected by PTA-FLA's voluntary dismissal, because a motion to confirm is a collateral proceeding over which the court could properly exercise independent jurisdiction.  Finally, the district court properly exercised supplemental jurisdiction because the case falls squarely within the ambit of § 1367(a).  The district court's exercise of subject matter and supplemental jurisdiction and its confirmation of the arbitration award are AFFIRMED.

---

resolution of this appeal.