**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NTCH-WA, INC., a Washington corporation, *Plaintiff-Appellant*, v. ZTE CORPORATION, a business incorporated under the laws of the People's Republic of China, *Defendant-Appellee*. | No. 17-35833 <br><br> D.C. No. 2:12-cv-03110-TOR <br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, Chief District Judge, Presiding

Argued and Submitted March 5, 2019
Seattle, Washington

Filed April 25, 2019

Before: Ronald M. Gould and Richard A. Paez, Circuit
Judges, and Dean D. Pregerson,* District Judge.

Opinion by Judge Gould

---

*The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY[**]

### Arbitration / Claim Preclusion

The panel affirmed the district court's judgment in favor of ZTE Corp. because claim preclusion barred plaintiff's claims in this diversity action.

Plaintiff previously arbitrated breach of contract and related claims against ZTE USA, a wholly-owned subsidiary of defendant ZTE Corp. ZTE Corp. was not a party to that arbitration. The arbitrator denied plaintiff's claims, a federal district court affirmed the award, and the Eleventh Circuit affirmed the district court judgment.

The panel held that the arbitration award and its confirmation by a district court together barred plaintiff from pursuing its current claims against ZTE Corp., under the doctrine of claim preclusion.

In an issue of first impression in this circuit, the panel held that in a diversity judgment case, the preclusion law of the state where the federal court, confirming an arbitration award, sat determined the preclusive effect of the award. The panel held that Florida law applied because a district court in Florida confirmed the award.

The panel held that under Florida law, claim preclusion barred plaintiff's claims because plaintiff was seeking the same remedy it sought in arbitration, the evidence needed to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

prove plaintiff's claims here was the same, ZTE Corp. was in privity with its wholly-owned subsidiary ZTE USA, and the parties were suing in the same capacity as in the arbitration.

## COUNSEL

Shannon Gallagher (argued), Law Office of Shannon Gallagher, Irvine, California; Joshua E. Austin, NTCH-WA Inc., Columbia, South Carolina; for Plaintiff-Appellant.

Laura Eve Besvinick (argued), Stroock & Stroock & Lavan LLP, Miami, Florida; Michael J. Kapaun, Witherspoon Kelley, Spokane, Washington; Frank T. Spano, Polsinelli PC, New York, New York; for Defendant-Appellee.

## OPINION

GOULD, Circuit Judge:

Plaintiff-Appellant NTCH-WA, Inc. previously arbitrated breach of contract and related claims against ZTE USA, a wholly-owned subsidiary of Defendant-Appellee ZTE Corp. ZTE Corp. was not a party to that arbitration. The arbitrator denied NTCH-WA's claims, the District Court for the Middle District of Florida confirmed the award under the Federal Arbitration Act, 9 U.S.C. § 9, and the Eleventh Circuit affirmed the district court's judgment.

The question before us is whether the arbitration award and its confirmation by a district court together bar NTCH-

WA from pursuing its current claims against ZTE Corp., under the doctrine of claim preclusion.[1] We hold that it does.

When a federal court sitting in diversity confirms an arbitration award, the preclusion law of the state where that court sits determines the preclusive effect of the award. Because a district court in Florida confirmed the award here, Florida law applies.  Under Florida law, claim preclusion bars NTCH-WA's claims because NTCH-WA is seeking the same remedy it sought in arbitration, the evidence needed to prove NTCH-WA's claims here is the same, ZTE Corp. is in privity with its wholly-owned subsidiary ZTE USA, and the parties are suing in the same capacity as in the arbitration. For these reasons, we affirm the district court's dismissal of NTCH-WA's claims.

# I

The background to the current controversy involves several related parties and suits: NTCH-WA is an entity— along with PTA-FLA, Inc.; Daredevil, Inc.; and NTCH-West Tenn., Inc.—"owned and controlled by Eric Steinmann."  *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1302 (11th Cir. 2016).  "[T]hey operate together under the name 'ClearTalk.'"  *Id.*  ClearTalk "offer[s] prepaid and flat-rate cell phone service to customers with poor credit or

---

[1] The terms "claim preclusion" and "issue preclusion" "have replaced a more confusing lexicon.  Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008).  The term "res judicata" refers "collectively" to claim and issue preclusion.  *Id.* at 892.  For clarity, we use the terms "claim preclusion" and "issue preclusion," and we are concerned here with the former.

who otherwise cannot open accounts with major cell phone providers." *Id.*

The ClearTalk entities filed suit against ZTE USA in 2011, asserting breach of contract and related claims. Daredevil sued ZTE USA in Missouri; PTA-FLA sued ZTE USA in South Carolina; and NTCH-West Tenn. sued ZTE USA in Tennessee. Steinmann sued ZTE USA *and* ZTE Corp. in California. ZTE USA moved to compel arbitration, and the parties eventually stipulated to a consolidated arbitration. From that point, the arbitration "went forward as a single unified proceeding that bound ZTE USA, PTA-FLA, Daredevil, NTCH-WA, and NTCH-West Tenn." *PTA-FLA, Inc.*, 844 F.3d at 1303.

In December 2011, the ClearTalk entities filed an Amended Statement of Claim in the arbitration. In the Amended Statement, each of the ClearTalk entities asserted claims against ZTE USA and ZTE Corp., although only Steinmann had, to that point, brought claims against ZTE Corp. The ClearTalk entities nonetheless contended that ZTE Corp. should be a party to the arbitration as to all claims because ZTE USA and ZTE Corp. "were alter egos of each other. ZTE Corp. so dominates the operations and decision-making of ZTE USA that the two entities are in effect indistinguishable." In the alternative, the ClearTalk entities asserted that ZTE USA and ZTE Corp. "were in fact agents and/or principals and/or coconspirators of each other."

The arbitrator declined to hear the claims against ZTE Corp., with the exception of Steinmann's claims. The arbitrator determined "that the scope of the arbitration" was limited to "all the claims, counterclaims, and defenses that exist or may arise between and among the parties subject to the jurisdiction of the courts in the lawsuits pending at the time of the agreement to arbitrate."

The arbitration hearing began in August 2013.   The arbitrator "heard close to 30 witnesses, and, in addition, reviewed many hundreds of exhibits submitted for consideration."   In February 2014, the arbitrator issued the Final Award in the arbitration, denying the ClearTalk entities' claims.  The United States District Court for the Middle District of Florida confirmed the award under the Federal Arbitration Act, 9 U.S.C. § 9, and the Eleventh Circuit affirmed the district court's judgment.  *See PTA-FLA, Inc.*, 844 F.3d 1299.

Once the arbitrator determined that NTCH-WA could not proceed against ZTE Corp. in arbitration, NTCH-WA initiated this action.   Its Second Amended Complaint asserted claims for breach of contract, tortious interference, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and unjust enrichment against ZTE Corp.   The district court stayed the case several times pending the conclusion of arbitration.  After the Eleventh Circuit rendered its decision, the district court lifted the stay and granted ZTE Corp.'s motion for summary judgment, dismissing NTCH-WA's claims.  The district court held that the arbitration award precludes NTCH-WA from pursuing its current claims.   NTCH-WA filed a timely notice of appeal.

## II

We review de novo whether claim preclusion bars NTCH-WA's claims.  *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

## III

### A

At the threshold, we address a choice-of-law question: namely, which law determines the preclusive effect of the arbitration award?  The district court in this case applied federal law, ZTE Corp. contends that Florida law applies,[2] and NTCH-WA contends that Washington law applies.  The question is one of first impression in our circuit.

A federal-court order confirming an arbitration award has "the same force and effect" as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect. *See Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) ("A judgment confirming an arbitration award is treated similarly to any other federal judgment."); *see also Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 585 (1st Cir. 1995) (holding that "when a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award"); *Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926, 929 (7th Cir. 1986) (giving claim preclusive effect to an arbitration award confirmed by a district court); Restatement (Second) of Judgments § 84(1) (1982) (subject to certain exceptions not relevant here, "a valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court").  "[F]ederal common law governs the claim-preclusive effect of" a judgment rendered "by a federal court sitting in diversity." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  But

---

[2] ZTE Corp. relies primarily on federal law in its brief, however.

federal common law, in such circumstances, requires us to "determine the preclusive effect of the prior [federal] decision by reference to the law of the state where the rendering federal diversity court sits." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246–47 (9th Cir. 2017); *see also Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009).

Because a federal-court order confirming an arbitration award has "the same force and effect" as a final judgment on the merits, 9 U.S.C. § 13, and because we determine the preclusive effect of a prior federal diversity judgment by reference to the law of the state where the rendering court sat, we hold that when a federal court sitting in diversity confirms an arbitration award, the preclusion law of the state where that court sits determines the preclusive effect of the arbitral award. Such a rule properly mirrors the rule that applies when a federal court is asked to give preclusive effect to an arbitration award that has been confirmed by a state court. *See Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989) ("The state court's confirmation of the arbitration award constitutes a judicial proceeding for purposes of [28 U.S.C. § 1738], and thus must be given the full faith and credit it would receive under state law. . . . To determine whether the requirements of issue preclusion are satisfied, this court must look to the law of the state in question."); *see also Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1184 (3d Cir. 1972) ("It has long been the law that the Full Faith and Credit Clause of the Constitution and the federal statute implementing that clause have made that which has been adjudicated in one state res judicata to the same extent in every other. Since the arbitration award involved here, and the judgment entered thereon, were rendered in New York, a Pennsylvania trial court must accord that award the same res judicata effect that

New York courts would.  And because a federal district court in a diversity case must apply the same principles of res judicata as would the corresponding state trial court, the federal court is also bound to apply the New York law of res judicata to the facts of this dispute." (quotations omitted)); 18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4475.1 (2d ed. 2018 update) ("[I]t seems to be agreed that once a state court has confirmed an award, the full faith and credit statute requires other courts to look to the law of that state.").  Applying the same preclusion law to determine the preclusive effect of a confirmed arbitration award—whether confirmed by a state court or a federal court sitting in diversity—is logical and prevents "the sort of 'forum-shopping . . . and . . . inequitable administration of the laws' that *Erie* seeks to avoid." *Semtek*, 531 U.S. at 508–09 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

Here, the arbitration took place in Florida and was confirmed by the District Court for the Middle District of Florida sitting in diversity there.  *See PTA-FLA, Inc.*, 844 F.3d at 1304–05, 1309–13.  Because a federal district court in Florida confirmed the arbitration award, we hold that Florida law governs its preclusive effect.

## B

Florida gives preclusive effect to arbitration awards confirmed by federal district courts.  *See ICC Chem. Corp. v. Freeman*, 640 So. 2d 92, 92–93 (Fla. Dist. Ct. App. 1994) (per curiam).  Under Florida claim-preclusion law, "[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that

action." *Kimbrell v. Paige*, 448 So. 2d 1009, 1012 (Fla. 1984) (quoting *Wade v. Clower*, 114 So. 548, 552 (Fla. 1927)). Claim preclusion applies when the following conditions are met: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom the claim is made." *Fla. Bar v. St. Louis*, 967 So. 2d 108, 119 (Fla. 2007) (quotation omitted). We conclude that those conditions are met here.[3]

## 1

First, the arbitration and this action concern the same "thing sued for": monetary damages. *Fla. Bar*, 967 So. 2d at 119. That the damages were sought under various legal theories is inapposite; the identity-of-the-thing-sued-for prong "focuses on the difference between money damages and injunctive relief—not on difference[s] between the *type* of monetary damages sought." *In re Residential Capital, LLC*, 513 B.R. 446, 459 (Bankr. S.D.N.Y. 2014) (applying Florida law); *see also Dougan v. Bradshaw*, 198 So. 3d 878, 883 (Fla. Dist. Ct. App. 2016) ("With respect to the identity of the thing being sued for, Appellant's replevin action sought the return of his property while Appellant's instant

---

[3] NTCH-WA disputed only the privity requirement in its opening brief. It contended for the first time in its reply brief that the arbitration and this case concern different causes of action. Normally we do not address "arguments not raised by a party in its opening brief," *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), but we address the four requirements of claim preclusion here because the district court did not apply Florida law and ZTE Corp. is not prejudiced by our consideration of all four requirements, *see Hall v. City of L.A.*, 697 F.3d 1059, 1071 (9th Cir. 2012) (noting that we may consider issues not raised in a party's opening brief "if the opposing party will not suffer prejudice").

suit sought money damages . . . and an injunction . . . . These 'things' are not identical.").

**2**

Second, NTCH-WA's cause of action here is the same as its cause of action in the arbitration. Under Florida law, "[t]he determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." *Albrecht v. State*, 444 So. 2d 8, 12 (Fla. 1984), *superseded by statute on other grounds as stated in Bowen v. Dep't of Envtl. Regulation*, 448 So. 2d 566, 568–69 (Fla. Dist. Ct. App. 1984); *accord Youngblood v. Taylor*, 89 So. 2d 503, 505 (Fla. 1956) ("[T]he test of the identity of the causes of action, for the purpose of determining the question of res adjudicata, is the *identity of the facts essential* to the maintenance of the actions." (emphasis in original and quotation omitted)).

Both actions allege the following facts: In 2006, PTA-FLA agreed to purchase wireless telecommunications equipment from ZTE Corp. and its wholly-owned U.S. subsidiary ZTE USA. PTA-FLA intended to use the equipment to establish a wireless network in Florida. But when the equipment allegedly did not work, the parties shifted their focus to other markets.

In late 2007, Daredevil entered into an agreement (the "Missouri Agreement") with ZTE Corp. and ZTE USA to establish a wireless network in Missouri. Under that agreement, the ZTE entities agreed to provide base stations and handsets to Daredevil at favorable prices. NTCH-WA, as an affiliate of Daredevil, is alleged to be a third-party beneficiary of the handset provision of the agreement.

Around the same time, the ZTE entities and the ClearTalk entities agreed to establish a wireless network in Washington. As part of that plan, the ClearTalk entities agreed to purchase remote switches from the ZTE entities. The ZTE entities delivered two remote switches. Those switches relied on a primary switch, located in Tennessee, to function. NTCH-WA accordingly sought and received assurances from ZTE agents that the primary switch would function. As an additional part of the plan, the parties amended the Missouri Agreement, in the "Missouri Addendum," and agreed that ZTE Corp. and ZTE USA would send forty base stations originally intended for use in Missouri to Washington instead. NTCH-WA is alleged to be a third-party beneficiary of the Missouri Addendum.

Relying on these agreements and promises, NTCH-WA allegedly expended significant resources to prepare a Washington network for use. The problem, as NTCH-WA alleges it, is that the primary switch in Tennessee never worked, and the ZTE entities never provided the base stations and handsets that were promised, giving rise to various claims. In the arbitration, NTCH-WA asserted claims for breach of contract, fraud, and unjust enrichment. Here, NTCH-WA has asserted claims for breach of contract, tortious interference, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and unjust enrichment.

Regardless of the disparate theories of the claims asserted, the arbitration and this suit concern the same facts: NTCH-WA alleges that the ZTE entities—in the Missouri Agreement and Addendum, and through the representations of agents—promised to provide working telecommunications equipment to NTCH-WA but failed to do so. The relevant evidence—what was promised, what

was delivered, and damages sustained—would be the same in both actions. Because the two suits concern the same facts and evidence, they are the same "causes of action" under Florida law. *See Albrecht*, 444 So. 2d at 12.

NTCH-WA contends that the causes of action differ because this case concerns different contracts and different activities than the arbitration. That is not so. NTCH-WA is relying on the same contracts (the Missouri Agreement and Addendum), the same promises (certain equipment would be provided and the equipment would work), and the same alleged bad acts (failure to make the primary switch operational, to provide base stations, and to provide handsets) as it did in the arbitration.

**3**

Third, privity exists between ZTE Corp. and ZTE USA, ZTE Corp.'s wholly-owned U.S. subsidiary. Under Florida law, "[t]o be in privity with a party to an earlier lawsuit, 'one must have an interest in the action such that she will be bound by the final judgment as if she were a party.'" *Provident Funding Assocs., L.P. v. MDTR*, 257 So. 3d 1114, 1118 (Fla. Dist. Ct. App. 2018) (quoting *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. Dist. Ct. App. 2017)).

Florida treats parent corporations and subsidiaries as privies for purposes of preclusion. *See Jenkins v. Lennar Corp.*, 972 So. 2d 1064, 1066 (Fla. Dist. Ct. App. 2008) ("Because Universal is a subsidiary of Lennar, they are privies, and thus, the parties to each of the previous lawsuits are identical."); *see also Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1371 (M.D. Fla. 2014) (applying Florida law and concluding that a parent and subsidiary were privies); *Mercer v. Honda Motor Co.*, 551 F. Supp. 233, 234–35 (M.D. Fla. 1982) (holding the same). In

a similar vein, Florida treats controlling shareholders of a corporation as privies of the corporation. *See, e.g.*, *Zikofsky v. Marketing 10, Inc.*, 904 So. 2d 520, 525–26 (Fla. Dist. Ct. App. 2005); *Red Carpet Corp. of Panama City Beach v. Roberts*, 443 So. 2d 377, 380 (Fla. Dist. Ct. App. 1983). Here, there is no dispute that ZTE USA is, and was, ZTE Corp.'s wholly-owned subsidiary. Under Florida law, this parent-subsidiary relationship is sufficient to show privity at the time of the arbitration.

NTCH-WA nonetheless contends that ZTE USA and ZTE Corp. were not in privity because, in connection with a motion to dismiss in this action, an agent of ZTE Corp. declared that ZTE Corp. and ZTE USA are different corporate entities, have different principal places of business, and have different assets.[4]  The declaration, however, states that ZTE USA is ZTE Corp.'s wholly-owned U.S. subsidiary.  As explained, a parent-subsidiary relationship is sufficient under Florida law to establish privity for purposes of preclusion.

## 4

Fourth, NTCH-WA, on the one hand, and ZTE Corp. and ZTE USA, as privies on the other, are suing and being sued in the same capacities—their corporate capacities—as in the

---

[4] As a preliminary matter, NTCH-WA did not rely on this declaration in its opposition to ZTE Corp.'s motion for summary judgment.  It is an improper basis on which to allege error. *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988) ("If a party wishes the court to consider an affidavit for more than one issue, the party should bring that desire to the attention of the court.  Having failed to do so, Forsberg cannot now fault the district judge for failing to consider the affidavit.").  But in any event, the declaration does not change the outcome.

arbitration. Thus, the last requirement for claim preclusion under Florida law is met. *See Ford v. Dania Lumber & Supply Co.*, 7 So. 2d 594, 595 (Fla. 1942) ("One essential element of [claim preclusion] is identity of parties suing in the same capacity."); *see also Couch Constr. Co. v. Fla. Dep't of Transp.*, 537 So. 2d 631, 632 (Fla. Dist. Ct. App. 1988).

## C

NTCH-WA contends that claim preclusion should not apply because of ZTE Corp.'s "gamesmanship." NTCH-WA alleges that ZTE Corp. actively tried to remain out of the arbitration proceeding, and succeeded in doing so. NTCH-WA contends that, for that reason, ZTE Corp. should not be able to invoke claim preclusion as a defense here.

NTCH-WA's contention is unpersuasive. Because ZTE Corp. was in privity with ZTE USA at the time of the arbitration, it is functionally as if ZTE Corp. had been a party to that proceeding. *See Provident Funding*, 257 So. 3d at 1118 (explaining that "[t]o be in privity with a party to an earlier lawsuit, 'one must have an interest in the action such that she will be bound by the final judgment as if she were a party'" (quoting *Pearce*, 219 So. 3d at 965)). NTCH-WA's reliance on *F.T.C. v. Garvey*, 383 F.3d 891 (9th Cir. 2004), is misplaced; the parties there were not in privity. Moreover, ZTE Corp. was not a party to the arbitration, with respect to NTCH-WA's claims, because NTCH-WA had not yet sued ZTE Corp. ZTE Corp.'s absence was not the result of "gamesmanship."

**IV**

The district court correctly concluded that claim preclusion bars NTCH-WA's claims here, and correctly entered judgment in favor of ZTE Corp.

**AFFIRMED.**