# United States Court of Appeals
## For the First Circuit

No. 12-2431

ALLSTATE INTERIORS & EXTERIORS, INC.,

Plaintiff,

v.

STONESTREET CONSTRUCTION, LLC,

Defendant/Third Party Plaintiff-Appellee,

v.

WEYBOSSET HOTEL, LLC,

Third Party Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella, Circuit Judge,
and Stearns,[*] District Judge.

Thomas More Dickinson for appellant.
Christine K. Bush, with whom Anastasia A. Dubrovsky and Scott
& Bush Ltd. were on brief, for appellee.

September 20, 2013

[*]Of the District of Massachusetts, sitting by designation.

**LYNCH, Chief Judge**.  After a ten-day bench trial, the district court awarded a judgment against Weybosset Hotel, LLC ("Weybosset") and in favor of its construction company, Stonestreet Construction, LLC ("Stonestreet"), in the sum of $571,595. Stonestreet and Weybosset are both Rhode Island companies. Weybosset appeals, arguing that there was no federal jurisdiction, and the $571,595 was awarded in error.

Weybosset argues that the district court erred in exercising supplemental jurisdiction over this case following the settlement of some of the dispute between the case's two diverse parties, Stonestreet and Allstate Interiors & Exteriors.  It also challenges one of the district court's discovery rulings, along with its interpretation of the governing construction contract.

We affirm.

## I.  Background

All of the claims in this case arise from the Hampton Inn & Suites renovation and construction project in Providence, Rhode Island.  Stonestreet, as the construction manager and general contractor, entered into a construction contract ("Contract") with Weybosset in November 2007, with an initial project completion date of November 25, 2008.  Largely as a result of cost overruns and other delays, disputes relating to the Contract have now been the subject of litigation in state and federal court.

-2-

A.          Key Contract Provisions

The main compensation provision in the Contract is its Guaranteed Maximum Price (GMP), which is defined as the sum of the "cost of work" and the "construction manager's fee." The GMP was not to exceed the maximum of $11,250,000 originally set by the contract, "but was subject to additions and deductions by changes in the Work as provided in the Construction Documents." The GMP-adjustment mechanism came in the form of "Change Order Requests" (CORs), under which Stonestreet could seek additional funds if project timing or cost requirements changed. Throughout the project, CORs were typically prepared by Stonestreet and submitted to Weybosset for approval and signature.

Included in the GMP was $809,888, which represented a lump sum of Stonestreet's "general conditions" costs from the preconstruction and construction phases of the project. The lump sum included more specific line-item estimates, including the costs of an administrative assistant, project executive, and project manager. During the project, Stonestreet divided the lump sum equally across its monthly payment requisitions until the original lump sum was fully billed by November 2008.

Generally, Stonestreet paid its subcontractors pursuant to its standard form contracts, which contained a pay-when-paid clause that stated: "It is agreed that the Contractor [Stonestreet], as a condition precedent to payment of any monies

which become due to the Subcontractor, must first receive payment from the Owner." The timing disconnect between the pay-when-paid provision and the payment schedule under the Contract between Weybosset and Stonestreet, which was based on the overall progress of the project, led to several instances of subcontractors not being paid after their work was completed.

B.        Project Delays

The main project delay concerned the provision of "permanent power" to the building. In the early stages of the project, Weybosset's existing structures provided temporary power; however, Stonestreet eventually required a permanent power supply to continue work on the project.[1] In the construction contract, the parties agreed that "[p]rimary service, cable and transformer" were excluded from Stonestreet's scope of work, and were thus controlled by Weybosset. At trial, witnesses testified that "primary service" means "permanent power."

Stonestreet initially anticipated having permanent power at the project site during the summer of 2008. Power was in fact not supplied at that time, and the delay in supplying permanent power led to delays in, among other things, installation of the mechanical, electrical, and elevator systems. As a result of these

---

[1] Stonestreet's witnesses testified at trial that without delivery of permanent power, Stonestreet could not disconnect any of the old electrical panels, nor could it fully supply power to the renovated building so that it could perform required life safety testing.

delays, Stonestreet generated an updated project schedule on October 27, 2008, which reflected a revised completion date of January 28, 2009; at that point, the remaining elements of the project could not be completed without permanent power at the site. Power was ultimately provided on January 6, 2009.

In light of these delays, Stonestreet submitted COR 127, which sought an increase in the total GMP of $152,473.20 to cover increased general conditions costs that resulted from the overall project delays. In January 2009, Stonestreet submitted a draft of Requisition 14, which sought payment for December 2008 work as specified in COR 127. At the time of submission, Stonestreet was not advised that it would not be paid for its continued work on the project (as reflected in COR 127), and it continued to install systems once permanent power was supplied to the building. In March and April, Stonestreet twice updated COR 127 to reflect continued project costs; Weybosset did not respond to either submission. On May 29, 2009, Edmund Landry, Weybosset's representative, formally rejected COR 127.

C.      Procedural History

The case was originally filed on June 26, 2009 in the U.S. District Court for the District of Rhode Island by Allstate Interiors & Exteriors ("Allstate"), one of the subcontractors on the project, against Stonestreet. Allstate sought payment of an outstanding balance of $244,725, and Stonestreet counterclaimed

that Allstate had not completed the work as originally agreed between the parties. In addition, Stonestreet filed a third-party complaint against Weybosset, bringing several state law causes of action arising from the construction project. The claims included breach of contract, breach of good faith and fair dealing, unjust enrichment, and tortious interference with contractual relations. Stonestreet also argued that Weybosset's failure to pay Stonestreet certain sums caused Stonestreet to breach its contract with Allstate and other subcontractors on the project, and that Weybosset should therefore indemnify Stonestreet for damages sustained as a result of such breaches.

While this case was pending in federal court, all three parties were involved in parallel litigation in Rhode Island state court. That litigation dealt with two mechanics' liens, filed against Weybosset by Allstate and Stonestreet, respectively. The dispute between Allstate and Weybosset in state court was resolved by settlement.

When Allstate resolved its claim against Weybosset in state court, it effectively resolved most of Allstate's claims against Stonestreet in federal court. Stonestreet's counterclaim against Allstate remained outstanding, and Allstate remained a party to the case. While the resolution of Allstate's claim against Stonestreet, confirmed during a January 21, 2010 hearing before the district court, came relatively quickly after the

initiation of this case, Allstate participated in discovery along with Stonestreet and Weybosset. Additionally, because Stonestreet's counterclaim against Allstate was still pending, Allstate remained a party to the case regardless of the state court settlement.

Following this partial settlement, Weybosset filed a motion to dismiss Stonestreet's third-party complaint for lack of subject matter jurisdiction in November 2009. It argued that the main dispute in the case concerned state law claims between two non-diverse parties, Weybosset and Stonestreet (both Rhode Island companies), and that exercising federal jurisdiction over the dispute between those parties following the resolution of some claims between Allstate and Stonestreet (the two diverse parties) was therefore improper. Notably, Allstate remained a party to the case following the partial settlement, as Stonestreet's counterclaim against Allstate was not part of the settlement. The district court denied Weybosset's motion on February 24, 2010.

Before trial, Weybosset filed a series of discovery motions, each seeking to strike certain of Stonestreet's materials from the record. The district court denied all three motions, and Weybosset appeals from one of those rulings.

Following a partial grant of summary judgment in Weybosset's favor that is not at issue in this appeal,[2] the district court conducted a ten-day bench trial. After the trial and the filing of post-trial memoranda, the district court issued its final order on October 31, 2012. As it is relevant to this appeal, the district court ruled in favor of Stonestreet on the core breach of contract claim and awarded damages in the amount of $571,595. Before this court, Weybosset appeals three of the district court's rulings: (1) the exercise of supplemental jurisdiction following Allstate and Stonestreet's partial settlement; (2) the interpretation of the construction contract for the purpose of calculating damages; and (3) the denial of Weybosset's discovery motion regarding supplemental expert reports.

## II. The District Court's Exercise of Supplemental Jurisdiction

We review a district court's decision regarding the exercise of supplemental jurisdiction for abuse of discretion. Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995). Finding that the district court did not abuse its discretion in exercising jurisdiction over the dispute between Stonestreet and Weybosset, we find no error.

---

[2] Weybosset's motion for partial summary judgment was filed with respect to $1,016,499 in subcontractor costs that Stonestreet sought to recover. Because Weybosset had already partially settled these claims by paying $893,521 to the subcontractors directly, the district court granted Weybosset's motion with respect to the sums already paid.

It is plain -- and the parties do not dispute -- that the district court initially had supplemental jurisdiction over the claims between Weybosset and Stonestreet under section 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are <u>so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.</u>  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added); <u>see</u> <u>Godin</u> v. <u>Schencks</u>, 629 F.3d 79, 83 (1st Cir. 2010).  State and federal claims are part of the same "case or controversy" for the purposes of section 1367(a) if they "'derive from a common nucleus of operative fact' or 'are such that [they] . . . would ordinarily be expected to [be] tr[ied] . . . in one judicial proceeding.'" <u>Penobscot Indian Nation</u> v. <u>Key Bank of Me.</u>, 112 F.3d 538, 564 (1st Cir. 1997) (second, third, and fourth alterations in original) (quoting <u>United Mine Workers</u> v. <u>Gibbs</u>, 383 U.S. 715, 725 (1966)).  Weybosset does not dispute that at the outset of the dispute, it was proper for the district court to exercise supplemental jurisdiction over Stonestreet's state law claims against Weybosset under section 1367(a).

Instead, Weybosset argues that the district court's decision on the jurisdictional issue is governed by

-9-

section 1367(b). In cases where the district court's original jurisdiction is based solely on diversity jurisdiction, that section strips federal jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the . . . requirements of [diversity jurisdiction]." 28 U.S.C. § 1367(b). Weybosset was made a party to the case under Rule 14, and argues that even though section 1367(b) applies to claims of "plaintiffs," the underlying rationale of that section should counsel against the district court's decision to exercise jurisdiction over this case.[3] Weybosset claims that we should read section 1367(b) to strip the district courts of jurisdiction over claims made by either plaintiffs or third-party plaintiffs against non-diverse parties brought into a case pursuant to Rule 14. Stonestreet's rebuttal is that Weybosset's reading of section 1367(b) is contrary to the

_____

[3] Weybosset's reliance on Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013), is misplaced. Weybosset argues that Genesis Healthcare "suggests that where the underlying claim that invokes federal jurisdiction has been resolved -- even if not formally disposed -- there is no 'case or controversy' sufficient to invoke jurisdiction under Article III." Genesis Healthcare turned on a question of mootness in a collective action under the Fair Labor Standards Act (FLSA). In that case, the lead plaintiff's claim was satisfied, and the Court held that once that individual claim was moot, so too was the larger suit because the lead plaintiff had no personal interest in representing other members of the group in the case. Id. at 1532. The jurisdictional issue in this case centers around the reach of federal jurisdiction to include state law claims between non-diverse parties; mootness principles do not control the outcome.

plain language of the statute and in conflict with established case law.  Stonestreet is correct.

Although we have not previously addressed this issue directly, we now hold that "plaintiff" in section 1367(b) refers to the <u>original</u> plaintiff in the action, and not to a defendant that also is a third-party plaintiff.  In so holding, we join several other circuits that have come to the same conclusion.  <u>See</u> <u>State Nat'l Ins. Co.</u> v. <u>Yates</u>, 391 F.3d 577, 580 (5th Cir. 2004); <u>Grimes</u> v. <u>Mazda N. Am. Operations</u>, 355 F.3d 566, 572 (6th Cir. 2004); <u>Viacom Int'l</u> v. <u>Kearney</u>, 212 F.3d 721, 726-27 (2d Cir. 2000); <u>United Capitol Ins. Co.</u> v. <u>Kapiloff</u>, 155 F.3d 488, 492 (4th Cir. 1998); <u>Dev. Fin. Corp.</u> v. <u>Alpha Hous. & Health Care, Inc.</u>, 54 F.3d 156, 160-61 (3d Cir. 1995).  This holding is consistent with Congress's intent that section 1367(b) should "prevent original plaintiffs -- but not defendants or third parties -- from circumventing the requirements of diversity." <u>Grimes</u>, 355 F.3d at 572; <u>see</u> <u>also</u> <u>United Capitol Ins. Co.</u>, 155 F.3d at 493 ("Because defendants are involuntarily brought into court, their joinders and impleaders were not deemed [by Congress] as suspect as those of the plaintiff, who is master of his complaint.").  On this reading of section 1367(b), because Stonestreet was not a plaintiff in the original action, the statute cannot operate to withdraw jurisdiction from subsequent claims made pursuant to Rule 14.

In the alternative, Weybosset argues on the basis of section 1367(c), which lists circumstances in which the district courts "may decline to exercise supplemental jurisdiction" over a claim that would otherwise be a proper subject for supplemental jurisdiction. 28 U.S.C. § 1367(c) (emphasis added). One such circumstance is if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Id. § 1367(c)(2). We find that the decision to exercise jurisdiction over the dispute between Stonestreet and Weybosset was not an abuse of discretion.

The district court's evaluation of Weybosset's jurisdictional argument focused on two key issues. Allstate had not dismissed its claim against Stonestreet in federal court because Stonestreet was still pursuing its related counterclaim against Allstate. Not only did Allstate remain a party to the case, but it was integrally involved in the case before Weybosset filed its motion to dismiss for lack of subject matter jurisdiction on November 12, 2009.

Perhaps more serious than Weybosset's contention that Allstate's partial settlement justified dismissal is its predominance argument. Weybosset's core claim is that the district court should have declined to exercise supplemental jurisdiction under section 1367(c)(2) because the state claims between the non-diverse parties to the case predominated over all other claims at

-12-

issue.  Section 1367(c) codifies the holding of <u>United Mine Workers of America</u> v. <u>Gibbs</u>, 383 U.S. 715 (1966), where the Supreme Court clarified that a district court may dismiss state claims "if it appears that the state issues substantially predominate, whether in terms of proof of the scope of the issues raised, or of the comprehensiveness of the remedy sought."  <u>Id.</u> at 726.  As the district court noted, both the Allstate-Stonestreet dispute and the Stonestreet-Weybosset dispute arose from the contracts relating to the same construction project.  Although Stonestreet's claims against Weybosset involved a greater monetary claim than its remaining dispute with Allstate, both sets of claims thus depended on the same body of evidence and sought a similar legal remedy in the form of contractual damages.  Stonestreet's non-diverse claims against Weybosset did not clearly predominate over the remaining diverse claims.

Furthermore, while section 1367(c) provides that a district court "may decline to exercise supplemental jurisdiction" under certain circumstances, it does not obligate a district court to do so.  Although the grounds enumerated in section 1367(c) ordinarily lead to dismissal of state claims, "this praxis is not compelled by a lack of judicial power" and "in an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding."  <u>Rodriguez</u> v. <u>Doral Mortg. Corp.</u>, 57 F.3d 1168, 1177 (1st Cir. 1995); <u>see also</u> <u>Oneida Indian Nation of N.Y.</u>

v. Madison Cnty., 665 F.3d 408, 439 (2d Cir. 2011) ("To be sure, the fact that one or more of the grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) applies does not mean that dismissal is mandated.").

In light of the substantial parity between the diverse and non-diverse cases and the district court's discretion over remaining supplemental jurisdiction under section 1367(c), we cannot find that the district court erred by deciding to exercise jurisdiction in this case.

III.  The District Court's Interpretation of the Contract Under Rhode Island Law

On appeal from a bench trial, pure issues of law are reviewed de novo, while findings of fact are reviewed for clear error.  Litif v. United States, 670 F.3d 39, 43 (1st Cir. 2012).

Weybosset challenges two sums included in the district court's judgment: $65,665 (for secretaries and estimators at Stonestreet's office) and $182,956 (for personnel, insurance, dumpsters, and other costs following the construction delay period).[4]  Weybosset argues the district court's inclusion of these amounts in the judgment amounted to a violation of Rhode Island

---

[4] In its reply brief, and for the first time before this court, Weybosset contested the inclusion of $81,050.67 in preconstruction costs.  Issues advanced for the first time in reply briefs are deemed waived.  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000).  Even if this challenge were properly before us, however, it suffers from the same legal deficiencies as those above.

contract law.  Both challenges lack merit, and we affirm the district court.

Weybosset argues that including the sum for secretaries and estimators was in error under § 6.2.1 of the Contract, which generally excludes (1) the salaries of Stonestreet's personnel at Stonestreet's principal office, (2) the expenses of that office, and (3) overhead and expenses, all except as specifically provided elsewhere in the contract.  Weybosset argues that the parties never formally altered this provision per the modification section of the contract, which required modifications to be in writing.  This argument is unavailing: at the outset of the project, when the parties agreed that Stonestreet would be paid for its "general conditions costs" in a lump sum, the now-disputed line items were explicitly included in the original breakdown of that lump sum.  In effect, there was a writing -- implicitly approved by both parties -- that resulted in this modification.  In short, the district court correctly held that Weybosset waived its challenge to these line items both when it agreed to the lump sum general conditions and when it paid Stonestreet's first thirteen requisitions (which included portions of this lump sum) without challenge.

Further, the district court upheld the use of the lump sum as a valid modification of § 6.2.1 of the construction contract under Rhode Island law.  See Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 92 (R.I. 1992) ("[P]arties to a contract can mutually

-15-

assent to modify a contract if the modification does not violate the law or public policy and if the modification is supported by adequate consideration."). In this case, the mutual assent came from the initial approval of the lump sum, and then from the conduct of the parties surrounding the payment of the first thirteen requisitions. Rather than a "sua sponte modification" of the contract as Weybosset contends, the district court's ruling was instead a valid finding of a contract modification and waiver based on the parties' continuing course of conduct during the project. The district court did not err in applying Rhode Island contract law.

Weybosset's argument opposing the judgment in Stonestreet's favor for "personnel, insurance, dumpsters[,] and other costs" is particularly tenuous and ill-specified. Neither the "other costs" nor their connection to the disputed contract provision are ever specified in Weybosset's briefing. That portion of Weybosset's argument, at the very least, is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The remaining claims are advanced in such a cursory fashion that they could also be waived under Zannino; however, on the merits, Weybosset's argument likewise fails. The district court's findings with regard to dumpster costs and additional

-16-

clean-up costs were based on trial testimony: the costs were included in COR 127 and arose as a result of project delays caused by Weybosset's failure to deliver primary power to the project on time. This testimony, and the district court's resulting finding, was consistent with § 7.3.6 of the Contract, which stated that Stonestreet was entitled to increased costs (including labor costs) that resulted from increases in the scope of work that were attributable to Weybosset. At trial, the district court noted Weybosset's failure to present any testimony or evidence to counter Stonestreet's explanation of these charges, and went on to note Weybosset's failure "to demonstrate that those charges were not legitimate." On appeal, Weybosset likewise offers no evidence on this point, and we see no reason to disturb the district court's considered determination.

## IV. Discovery Motion

In managing discovery disputes, we recognize the district court's broad discretion. As such, we disturb a trial court's determination on a discovery matter "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989); see also Brandt v. Wand Partners, 242 F.3d 6, 18 (1st Cir. 2001) ("Discovery decisions by the . . . district court are reviewed for abuse of discretion, and the

-17-

discretion in this area is very broad, recognizing that an appeals court simply cannot manage the intricate process of discovery from a distance.").  In light of this standard, we affirm the district court's rulings on Weybosset's discovery motion.

Weybosset's appeal on this point centers on Stonestreet's provision -- shortly after expert discovery closed, but a year before trial -- of a supplemental interrogatory response and supporting documentation from one of Stonestreet's experts.  The district court found that these corrected disclosures in fact were timely and contemplated by Rule 26(e)(2).  See Fed. R. Civ. P. 26(e)(2) (providing that a party's duty to supplement an expert's report "extends both to information included in the report and to information given during the expert's deposition," and that this information "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due").

It is clear that Stonestreet's supplemental materials were disclosed in a timely fashion; further, Weybosset falls well short of proving prejudice resulting from the district court's ruling.  It claims that the district court's ruling on the discovery motion "impeded Weybosset's ability to prepare for trial and put counsel in the position of having no opportunity to inquire on these documents until the trial itself."  This contention is without merit.  Not only did Stonestreet's supplemental materials reflect a change in calculations in Weybosset's favor, but at

trial, Weybosset's expert testified that his review of Stonestreet's supplemental materials did not change the opinions initially expressed in his expert report.  Finally, the one-year lag between the disclosure of the supplemental materials and trial make plain that Weybosset had ample time to inspect the materials prior to trial.

We affirm the district court's discovery ruling.

## V.  Conclusion

The district court's judgment is affirmed.  Costs are awarded to Stonestreet but we deny its request for an award of double costs.