# United States Court of Appeals
## For the First Circuit

Nos. 24-1328
     24-1335

COCO RICO, LLC,

Plaintiff, Appellant/Cross-Appellee,

v.

UNIVERSAL INSURANCE COMPANY,

Defendant, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Gelpí, Lipez, and Rikelman,
Circuit Judges.

Julián R. Rivera-Aspinall, with whom Eduardo R. Jenks
Carballeira and Rivera-Aspinall, Garriga & Fernandini P.S.C. were
on brief, for appellant.

Victor O. Acevedo-Hernández, with whom Juan Rafael González
Muñoz, Gonzalez Muñoz Law Offices P.S.C., Luis R. Ramos Cartagena,
Israel Fernández Rodríguez, and Casillas, Santiago & Torres LLC
were on brief, for appellee.

June 20, 2025

**RIKELMAN**, **Circuit Judge**.  After Hurricane Maria damaged its business, Coco Rico, LLC sued its insurer, Universal Insurance Company, for failing to pay its insurance claim and won.  The jury awarded Coco Rico higher damages for its business interruption loss claim than it had requested, plus extra, consequential damages.

This appeal centers on the district court's rulings on several post-verdict motions: Universal sought to eliminate or reduce the jury's damages awards, while Coco Rico sought attorneys' fees and prejudgment interest from Universal.  After the district court denied the motions, both parties appealed.

We agree with Universal that there was no evidentiary basis for the jury to award consequential damages or higher business interruption loss damages than Coco Rico had established at trial.  But we see no abuse of discretion in the district court's decision to deny Coco Rico's request for fees and prejudgment interest, which the court could award only if it had concluded that Universal's conduct during the litigation had been "obstinate."  Thus, we reverse the district court's ruling denying Universal's motions regarding the damages awards and affirm its ruling denying Coco Rico's motion for attorneys' fees and prejudgment interest.

# I. BACKGROUND

## A. Relevant Facts

For many years, Coco Rico manufactured beverage concentrate in Puerto Rico. In September 2017, Hurricane Maria caused widespread damage throughout Puerto Rico, including to Coco Rico's manufacturing facility. Soon after, Coco Rico contacted its insurer, Universal, to submit an insurance claim.

The insurance policy between Universal and Coco Rico included "Business Income" and "Extra Expense" coverage ("BI & EE" insurance, sometimes referred to as "business interruption loss" insurance). Generally, BI & EE insurance covers expenses that a business incurs while it is temporarily unable to operate due to a covered reason, such as a natural disaster. Business Income insurance can make up for income that the business would have earned if it had not needed to suspend its operations. It can also cover ongoing operating expenses, like payroll. Extra Expense insurance covers the extra costs that arise as the business restores its operations. For example, an Extra Expense might include the cost of relocating to a temporary manufacturing facility and equipping that facility.

Insurance policies usually do not cover business interruption loss indefinitely; instead, they cover loss during a prescribed period while the business attempts to restore its operations. Coco Rico's insurance policy provided that business

interruption loss would be calculated over the course of the "period of restoration." In turn, the policy defined the restoration period as the interval between the date of the damage (approximately) and the date when the damaged property "should [have been] repaired, rebuilt[,] or replaced with reasonable speed and similar quality" or when "business [was] resumed at a new permanent location." The policy also capped BI & EE coverage at $750,000.

## B. Procedural History

When Coco Rico and Universal were unable to agree on the amount owed to Coco Rico for its BI & EE loss covered under the policy, Coco Rico sued Universal in the United States District Court for the District of Puerto Rico. Asserting diversity jurisdiction under 28 U.S.C. § 1332, Coco Rico alleged that Universal had violated Puerto Rico law. In particular, Coco Rico alleged a breach of contract based on Universal's purported failure to pay its claim under its insurance policy. Coco Rico sought payment for its business interruption loss covered by the policy, as well as compensatory and consequential damages under Puerto Rico law. See P.R. Laws Ann. tit. 31, §§ 3018, 3023. Coco Rico also sought attorneys' fees and prejudgment interest.

The case proceeded to a jury trial. At trial, Coco Rico presented several witnesses. Richard Hahn, Coco Rico's owner, testified about Coco Rico's insurance policy; damage to Coco Rico's

facility; its attempts to restore operations, including its use of a manufacturing facility in New Jersey; and costs it incurred. Roberto Villafañe Gomez Jr., a Coco Rico employee, testified about damage to the facility and explained that Coco Rico had continued to pay his salary. Coco Rico also introduced the testimony of Rafael Lebrón Román, a consultant who handled Coco Rico's property claim (i.e., its insurance claim related to damage to its manufacturing facility, which is not covered by BI & EE insurance).

Finally, an expert "in the field of business income loss calculation," Carlos Juan Iglesias Colon, testified on Coco Rico's behalf. Iglesias described the concept of business interruption loss and his process for calculating it. He explained that the calculation involved projecting, based on past financial statements, what sales would have been had the hurricane not occurred. This "but-for" approach, he opined, determined "what [the insurer] need[ed] to pay to put [the insured] in the same position" it would have been in but for the covered event. Iglesias calculated that the total BI & EE loss for the restoration period was $686,098.

After the close of evidence, Universal moved for judgment as a matter of law on Coco Rico's request for consequential damages. It argued that Coco Rico had provided no proof of additional, consequential damages resulting from Universal's purported breach of the insurance policy. The court

denied Universal's motion, noting "portions of the testimony of Mr. Hahn regarding additional damages."

The jury ultimately found that Universal breached its insurance policy with Coco Rico, and that Universal owed Coco Rico $873,000 to cover Coco Rico's BI & EE loss.  The jury also found that Universal "acted in bad faith by delaying the fulfillment of its contractual obligation[s] with [Coco Rico]," and that Coco Rico suffered $250,000 in "consequential damages . . . that were caused by [Universal's] bad faith" actions.

A flurry of motions followed.  Universal filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  In that motion, Universal argued again that Coco Rico had presented no evidence of consequential damages.  It also filed a motion for a new trial and/or for a reduction of the contractual damages award.  Universal contended that the $873,000 BI & EE award was unsupported by the evidence and exceeded the extent of BI & EE loss proven by Coco Rico, which was $686,098. Coco Rico filed its own motion, requesting that the court amend the judgment to award it prejudgment interest, post-judgment interest, expenses, and reasonable attorneys' fees.  It argued that under Puerto Rico Rules of Civil Procedure 44.1(d) and 44.3(b), Universal was liable for interest, expenses, and attorneys' fees because it had behaved "obstinately."

The district court denied both parties' motions. It rejected Universal's renewed motion for judgment as a matter of law on the consequential damages claim without further elaboration beyond what it had stated on the record earlier at trial. When it came to the motion for a reduction of the contractual damages award and/or a new trial, the district court reduced the jury's BI & EE award from $873,000 to $750,000, in line with the insurance policy maximum. But it rejected Universal's argument that the BI & EE award should be further reduced to $686,098. It found that, although Coco Rico's own expert calculated a loss of about $686,000, "the jury may have also taken into account" two trial exhibits that "exceed the sum of $686,000." And as to Coco Rico's motion to amend the judgment to add attorneys' fees and prejudgment interest, the district court denied the motion without providing its reasoning.[1]

Both parties appealed.

## II. DISCUSSION

Universal argues that the district court should have (1) reduced the jury's business interruption loss award from $873,000 to $686,098 or ordered a new trial on damages, and (2) entered judgment as a matter of law on consequential damages,

---

[1] The district court granted costs and post-judgment interest to Coco Rico, which Universal does not challenge.

setting aside the jury's additional $250,000 verdict.  Coco Rico, for its part, argues that the district court should have amended the judgment to award it attorneys' fees and prejudgment interest pursuant to the Puerto Rico Rules of Civil Procedure.[2]  We agree with Universal.

## A. Business Interruption Loss

We begin with Universal's challenge to the jury's award of $873,000 for Coco Rico's BI & EE loss.  We review a district court's decision not to reduce a jury's damages award for abuse of discretion.  See Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir. 1999).  "This deferential standard imposes a correspondingly heavy burden on parties who challenge the amount of damages awarded by allegedly overgenerous juries."  Dopp v. Pritzker, 38 F.3d 1239, 1249 (1st Cir. 1994).  And when "the trial judge has reviewed the jury's handiwork and has ratified its judgment," this burden "grows heavier."  Id.  Nevertheless, we have concluded that this heavy burden is met when the verdict

---

[2] Coco Rico also challenges the district court's ruling on the BI & EE damages award -- specifically, the court's decision to reduce these damages to the policy limit of $750,000.  It argues that the jury's finding of bad faith "voids the policy limits" and thus the court should not have reduced the award at all.  But Coco Rico makes this argument for the first time in its reply brief, and thus we deem it waived.  See Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 74 n.4 (1st Cir. 2013).

"fall[s] outside the broad universe of theoretically possible awards that can be said to be supported by the evidence."  Id.

The district court found that two trial exhibits -- Exhibits U and Y -- supported a verdict of $750,000 in damages.  Universal contends, however, that Exhibits U and Y on their own are insufficient to support a BI & EE finding in excess of $686,098.

A jury "is free to select the highest figure for which there is adequate evidentiary support."  Id. (quoting Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982)).[3]  When a jury awards purely economic damages -- rather than damages for pain and suffering, for example -- "the jury's award must be rooted in an adequate evidentiary predicate."  Dopp, 38 F.3d at 1250; see also Air Safety, Inc. v. Roman Cath. Archbishop of Bos., 94 F.3d 1, 5 n.9 (1st Cir. 1996) ("Although we do not lightly reverse an award for economic loss, the inquiry in such a case is much more closely focused on whether there is adequate evidentiary support for the amount awarded.").  As a result, a verdict based on economic damages "will be reduced or set aside only if it is shown to exceed

_____

[3] We have held that state (or here, Puerto Rico) law governs the question of whether a jury's award is excessive in a diversity case.  See Suero-Algarín v. CMT Hosp. Hima San Pablo Caguas, 957 F.3d 30, 40 (1st Cir. 2020).  However, the parties have not cited to any Commonwealth law on this point or suggested that Commonwealth law would supply a different standard than federal law for evaluating this issue.

any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." Dopp, 38 F.3d at 1249 (quoting Segal v. Gilbert Color Sys., Inc., 746 F.2d 78, 81 (1st Cir. 1984)).

We agree with Universal that the award of $750,000 in economic damages here exceeds any rational appraisal of the evidence based on Exhibits U and Y. Both exhibits involve Lebrón, who, as mentioned, represented Coco Rico in its property insurance claim only. Exhibit U, sent two years after the hurricane, is an email chain between Lebrón and a Universal executive. In it, Lebrón stated that "Universal withheld money that clearly should have been in the insured's hands . . . which now amounts to over $900,000.00." Exhibit Y is an email dated one month later, sent by Universal's insurance adjuster to Lebrón and others representing Coco Rico. It explained that, although Coco Rico filed a BI & EE claim for $901,976 -- divided into "Business Interruption," "Expenses," and "Transition Expenses" -- Universal offered $203,338.59.

We do not see how these documents provide any evidentiary basis for a business interruption loss award above $686,098, especially in light of the trial evidence as a whole. The documents show that in November and December 2019, Coco Rico claimed approximately $900,000 in business interruption loss. But they contain no facts substantiating that Coco Rico suffered this

loss.  For example, they lack information about Coco Rico's sales, projected earnings, or attempts to restore operations.  Nor do they show how Coco Rico calculated the $900,000 figure.  Lebrón, who was a fact witness, did not testify to any such calculations.  Indeed, according to his testimony, he did not handle the business interruption loss claim and did not perform any BI & EE calculations.[4]  The bare fact that Coco Rico initially claimed a $900,000 business interruption loss falls short of showing that Coco Rico actually experienced a $900,000 loss.  Thus, these emails do not provide adequate evidentiary support for the jury's calculation, even under our highly deferential standard.

What is more, at trial, Coco Rico expressly and repeatedly described its BI & EE damages as no more than $686,098.[5] First, Coco Rico asked Hahn during his testimony whether he knew "the amount of money that is owed to Coco Rico LLC due to [BI &

---

[4]  Instead, as mentioned, Lebrón focused on Coco Rico's property insurance claim, which is not at issue.

[5] As Universal points out, Coco Rico also quantified its BI & EE damages as $686,098 before trial.  In the parties' joint proposed pretrial order, a table outlining the alleged damages indicated that Coco Rico's business interruption loss was $686,098.  And in Coco Rico's proposed uncontested material facts included in that same filing, Coco Rico stated that its "business income loss due to the effects of Hurricane Maria for the period of September 21, 2017, through November 8, 2019, is estimated at $686,098.00."  We do not understand Coco Rico to have stipulated to a damages amount, however, as the district court did not submit any such stipulation to the jury and Universal does not argue that it should have done so.

- 11 -

EE] loss." Hahn replied that the amount was $686,000. Second, Coco Rico's BI & EE expert, Iglesias, testified that the BI & EE loss was $686,098. Third, in closing arguments, Coco Rico argued that the BI & EE loss was $686,098. These statements reaffirm that Coco Rico did not present evidence of more than $686,098 in BI & EE loss, and in fact it was "quite specific" in quantifying its BI & EE damages at this number. Koster, 181 F.3d at 34 & n.4. "In the face of such firm evidence of economic damage, we cannot say that the jury could reasonably conclude" that Coco Rico "was damaged above and beyond what [it] said [its] damages were." Id.; see also Havinga v. Crowley Towing & Transp. Co., 24 F.3d 1480, 1489 (1st Cir. 1994). Thus, we reverse the district court's ruling denying Universal's motion to reduce the jury's business interruption loss award from $873,000 to $686,098.

## B. Consequential Damages

Universal next argues that the district court erred when it denied its renewed motion for partial judgment as a matter of law to set aside the jury's award of $250,000 in consequential damages. See Fed. R. Civ. P. 50(b). Our review is de novo, and we "may reverse the denial of the motion only if reasonable persons could not have reached the conclusion that the jury embraced." Negron-Rivera v. Rivera-Claudio, 204 F.3d 287, 289-90 (1st Cir. 2000).

The crux of Universal's argument is that Coco Rico presented no evidence of consequential damages. The district court found, however, and Coco Rico reiterates, that "portions of the testimony of Mr. Hahn regarding additional damages" permitted a reasonable jury to find consequential damages.

To recap Coco Rico's theory at trial, it claimed that it was entitled to consequential damages under a Puerto Rico statute providing that "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay . . . shall be subject to indemnify for the losses and damages caused thereby." P.R. Laws Ann. tit. 31, § 3018.[6] The district court instructed the jury that consequential damages are "additional damages" that could be awarded only if the jury made a finding of bad faith.[7] At trial, Coco Rico's counsel relied on a consequential damages theory to

_____

[6] In ruling on Universal's motion for judgment as a matter of law on consequential damages, the district court explained its understanding that "the Puerto Rico Supreme Court has yet to clarify whether a claim for bad faith sounds in contract under [title 31, section 3018 of the Laws of Puerto Rico Annotated] or under" tort law. But Coco Rico's complaint references section 3018 only and does not reference any consequential damages claim under tort law. Further, although the jury instructions stated that "[t]he Civil Code of Puerto Rico distinguishes between damages resulting from the breach of contract and damages resulting from a breach of obligations and duties imposed by nature and by law that are necessary for social coexistence," the instructions only included the text of section 3018.

[7] Although the insurance policy excludes consequential damages, neither party argues that the policy's text precluded the jury's consequential damages award.

reach "losses and extra expenses . . . beyond the calculated period of restoration." Thus, in seeking consequential damages, Coco Rico claimed damages it allegedly suffered on top of its business interruption loss, particularly after the restoration period.

To support the jury's consequential damages award, Coco Rico points us to alleged testimony by Hahn, but that testimony appears nowhere in the record. According to Coco Rico, Hahn testified that "as a result of not being paid by [Universal], [Coco Rico] continued suffering from consequential damages in the form of lost business income, which he estimated at $130,000.00 per year." The record, however, contains no such testimony. The $130,000 figure is not even mentioned until oral argument on Universal's pre-verdict motion for judgment as a matter of law, when Coco Rico's counsel claimed that Hahn testified to that number. Later, the district court indicated -- and Coco Rico conceded -- that the $130,000 figure was the only estimate offered concerning consequential damages. The court asked: "And you would agree that for [consequential damages] we don't have expert testimony, right? All we have is the word of Mr. Hahn that it was 130 grand per year." Coco Rico's counsel answered, "I agree." But as we just explained, counsel was incorrect that Hahn had ever testified as to that figure. The $130,000 number is a statement

by counsel, not a fact in the record that can form a legally valid basis for the jury's consequential damages award.

Before us, Coco Rico tries to highlight portions of Hahn's actual testimony that it contends support the consequential damages award. For example, it points to Hahn's statements that it was less expensive for Coco Rico to operate in Puerto Rico as compared to elsewhere in the United States and that Coco Rico preferred to operate in Puerto Rico because of the brand's history. Hahn also testified that Coco Rico continued to pay the salaries of Puerto Rico-based employees "to this day." And Hahn stated that "[e]very year that we operate and don't operate in Puerto Rico is . . . hundreds of thousands of dollars that it costs us not to be down here."

But this testimony is far too general and conclusory to provide an evidentiary basis for the jury's award. To show business interruption loss under the contract, Coco Rico employed Iglesias to undertake detailed calculations to compare projected business outcomes to actual loss. By contrast, Hahn's general claims about losing hundreds of thousands of dollars each year gave the jury no foothold for determining a specific dollar amount for consequential damages. And instead of explaining his method for reaching this estimate, Hahn testified that he "computed [the number] in [his] mind." Although neither expert testimony nor precise calculations are always required to establish damages,

"[a] jury should not be asked to decide an issue that relies solely on conjecture and speculation." Achille Bayart & Cie v. Crowe, 238 F.3d 44, 48 (1st Cir. 2001) (holding that judgment as a matter of law was proper where the jury "could only speculate" as to amount of money owed); see also Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256, 262 (1st Cir. 1976) ("[W]hile a plaintiff need not demonstrate the amount of damage with mathematical precision, it must provide sufficient evidence to take the amount of damages out of the realm of speculation and conjecture." (citations omitted)).

What is more, Hahn's testimony at trial all but forecloses a verdict awarding consequential damages. On direct examination, Coco Rico's counsel asked Hahn whether the "[BI & EE] losses were the only losses incurred by [his] business as a consequence of not receiving payment," to which Hahn answered, "I believe so, yes." That testimony entirely undermines the jury's verdict.

Shifting gears, Coco Rico also argues that if it suffered a BI & EE loss of $873,000 during the restoration period, a $250,000 award for damages suffered after the restoration period and until trial "is a more than reasonable inference." But absent evidence permitting the jury to calculate those damages, its award is still speculative.

- 16 -

Finally, Coco Rico returns to Lebrón's testimony and Exhibits U and Y, all of which demonstrated that Coco Rico submitted a claim to Universal for about $900,000 of BI & EE in late 2019.  But this evidence pertains to Coco Rico's claim for BI & EE payment under the insurance policy, not to any additional, consequential damages that were meant to compensate Coco Rico for any losses beyond the restoration period.

We thus agree with Universal that the record contains no evidence supporting the jury's award of consequential damages. Accordingly, we reverse the district court's ruling denying Universal's motion to set aside the consequential damages award as a matter of law.

## C. Attorneys' Fees and Prejudgment Interest

At the close of trial, Coco Rico moved for an award of attorneys' fees and prejudgment interest under Puerto Rico law. The parties agree that the Puerto Rico Rules of Civil Procedure supply the legal standard for determining whether Universal owes Coco Rico attorneys' fees and prejudgment interest.[8]  Under Rule 44.1(d), "[w]here a party or party's counsel has acted obstinately

---

[8] We have previously held that Puerto Rico's rules governing attorneys' fees and prejudgment interest are substantive under the Erie doctrine and apply in a diversity case.  See Dopp, 38 F.3d at 1252 ("In a diversity case in which the substantive law of Puerto Rico supplies the basis of decision, a federal court must give effect to Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of Civil Procedure."); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938).

or frivolously, the court, in its judgment, shall impose on such person the payment of a sum in attorney's fees which the court may deem to correspond to such conduct." P.R. Laws Ann. tit. 32, app. V, R. 44.1(d). Under Rule 44.3(b), "the court will . . . impose on obstinate parties the payment of interest . . . from the time the cause of action arose." Id. R. 44.3(b).

As we mentioned, the district court denied Coco Rico's motion in a summary order without explanation. Coco Rico contends that (1) the district court legally erred in denying the motion, or (2) at a minimum, we should vacate the district court's order so that it can provide reasoning for its decision on remand. Universal replies that the district court properly denied the motion and was not required to explain its decision.

Although the district court did not provide its reasoning for denying Coco Rico's motion for attorneys' fees and prejudgment interest, the motion was fully briefed by both sides. In such circumstances, we can proceed on the understanding that the district court was persuaded by Universal's arguments. See Lebrón v. Puerto Rico, 770 F.3d 25, 30 n.8 (1st Cir. 2014) (interpreting district court decision "to adopt the rationale pressed by [the prevailing party] on appeal"); T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 38 (1st Cir. 2020) (considering the "record as a whole" to determine whether district court abused its discretion because the district court "[did] not state its

- 18 -

reasons").  We proceed on that assumption here and review the district court's decision for an abuse of discretion.  See Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 30 (1st Cir. 2002).  In doing so, we note that a district court's denial of attorneys' fees and prejudgment interest under the Puerto Rico Rules of Civil Procedure "is rarely upset."  Mejías-Quiros v. Maxxam Prop. Corp., 108 F.3d 425, 429 (1st Cir. 1997).

The critical question under Rules 44.1(d) and 44.3(b) is whether Universal behaved "obstina[tely]" during the litigation. Dopp, 38 F.3d at 1252.  To find that a party has acted obstinately, a court must "determine a litigant to have been unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay."  Correa, 298 F.3d at 30 (citation omitted).  "Examples of obstinate conduct include[] denying all liability in answering a complaint, where the defendant later admits liability; raising inapplicable defenses; denying all liability when only the amount of damages sought is contested; and denying a fact, knowing it is true."  Id. at 31.  Critically, "even if a party's claim ultimately fails" at trial, "it cannot be deemed frivolous or obstinate for that reason alone."  Dopp, 38 F.3d at 1254.

In evaluating whether Universal behaved obstinately, we cannot consider any conduct that preceded the litigation.  See id.

(holding that "events antecedent to the litigation" cannot trigger a finding of obstinacy). Although Coco Rico identifies in its appellate brief several instances of allegedly obstinate pre-litigation conduct by Universal, at oral argument, it acknowledged that this conduct is legally irrelevant under these rules. Thus, we only consider Universal's conduct during litigation.

We conclude that the district court did not abuse its discretion when it held that Universal's litigation conduct was not obstinate. Initially, we note that the district court made no explicit factual finding of obstinacy, frivolity, or any sanctionable conduct at any point during the litigation -- nor did Coco Rico seek such a finding. See P.R. Tel. Co. v. U.S. Phone Mfg. Corp., 427 F.3d 21, 33 (1st Cir. 2005) ("Factual findings of specific instances of misconduct, taking into account the overall character of the litigation, are required to support a finding of obstinacy mandating the award of attorney fees under Puerto Ric[o] law."), abrogated on other grounds by Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008). Coco Rico contends that the relevant factual determination of Universal's obstinacy was made by the jury when it found that Universal acted in bad faith. But the jury's determination of bad faith does not amount to an obstinacy finding. The question posed to the jury was whether Universal "acted in bad faith by delaying the fulfillment of its

contractual obligation[s] with" Coco Rico. This question hinges on pre-litigation conduct, and therefore the jury's verdict does not show that Universal acted "obstinately" during litigation.

Coco Rico does point us to several instances of purportedly obstinate litigation conduct. It argues that, at the pleading stage, Universal "unreasonably denied most of [Coco Rico's] allegations and raised numerous unsubstantiated defenses."

Universal responds, however, with reasoned explanations for each of its denials and defenses. For instance, Coco Rico objects to the fact that Universal "den[ied] and challeng[ed] subject matter jurisdiction" in its answer to the complaint. But Universal explains that it questioned diversity jurisdiction based on court filings indicating that Hahn was not Coco Rico's sole member, and that after reviewing the evidence Coco Rico produced concerning Hahn's sole membership, Universal did not pursue that challenge. Coco Rico also complains that Universal denied allegations "that practically transcribe the insurance policy terms and conditions." But Universal points out that it submitted a copy of the insurance policy in its answer instead of acceding to Coco Rico's summaries of the agreement. Coco Rico next contends that Universal obstinately denied "that Hurricane María entered as a Category 4 Hurricane and that it caused widespread damage to Puerto Rico" on September 20, 2017. But Universal notes that it only objected to the allegation as phrased, that it affirmatively

- 21 -

averred that Hurricane Maria struck Puerto Rico on September 20, 2017, and that no evidence of Hurricane Maria's rating was introduced or relevant at trial. Finally, Coco Rico argues that Universal "rashly deni[ed]" various allegations to the effect that Universal had underpaid Coco Rico and engaged in unfair practices, despite contrary evidence at trial. But as Universal points out, Coco Rico does not explain why denying these allegations was obstinate at the time Universal answered the complaint. And as we have explained, the mere fact that a claim fails at trial does not render a party obstinate for raising it in the first place.

Similar problems confront Coco Rico's arguments about Universal's affirmative defenses. Coco Rico notes that Universal "raised 77 . . . affirmative defenses," but raising a litany of defenses is not unusual in litigation. It also points out that Universal alleged as an affirmative defense that Coco Rico resumed business operations in Florida in 2018, a fact that Universal did not prove at trial. But again, that this particular defense failed at trial does not necessarily mean that Universal was obstinate in asserting it. Further, Universal directs us to an email from its adjuster to Coco Rico's representatives expressing Universal's understanding that Coco Rico resumed operations in Florida in 2018 -- and highlights that Coco Rico never replied to that email. Thus, Universal argues, and we agree, that it was not obstinate for it to maintain this understanding of the facts.

Coco Rico also contends that Universal behaved obstinately at trial. In particular, Coco Rico focuses on Universal's assertions in its opening statement and closing argument that Coco Rico was entitled to "zero" payment under the contract because it allegedly misrepresented facts during the claims process.

But each of Coco Rico's arguments is either unsupported by the record or waived. First, Coco Rico argues that Universal "never presented evidence" concerning its misrepresentation defense at trial. The trial record, however, proves otherwise. For example, Universal presented the testimony of Margarita Rivera Perez, a forensic accountant who worked on the adjustment of Coco Rico's insurance claim. Rivera testified that Coco Rico's representatives told her that Coco Rico had resumed operations prior to March 31, 2018, which would undermine Coco Rico's assertion that it continued to suffer business interruption loss past that date. Further, Universal introduced Exhibit Y, which, as we have explained, showed that Coco Rico initially claimed that it suffered approximately $900,000 of business interruption loss. Because Coco Rico's expert Iglesias ultimately calculated a business interruption loss of less than $700,000, Universal argued that this initial calculation was a misrepresentation. Ultimately, the jury does not appear to have credited this view of the evidence. But again, the fact that Universal's argument failed

at trial does not, on its own, establish that it was "obstinate" or frivolous.

Second, Coco Rico contends that Universal should not have argued at trial that it owed Coco Rico "zero" because before trial, Universal had offered Coco Rico a business interruption loss payment of $203,000. But Coco Rico waived this argument because it did not raise it before the district court.

Finally, Coco Rico has identified no authority, nor are we aware of any, holding that a district court must provide its reasoning when denying attorneys' fees and/or prejudgment interest under Rules 44.1(d) or 44.3(b) of the Puerto Rico Rules of Civil Procedure.[9] Although such reasoning would aid our analysis, its absence is not dispositive. And for the reasons we have explained, Coco Rico has failed to identify any abuse of the court's discretion. As a result, and given the deference we owe the

---

[9] At oral argument before us, Coco Rico quoted language from Dopp explaining that a court abuses its discretion in making an obstinacy determination "when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." Dopp, 38 F.3d at 1253 (citation omitted). But this language merely sets out the standard for abuse of discretion review generally. We do not understand Coco Rico to be arguing, nor would we agree, that all district court decisions subject to abuse of discretion review must contain an explanation of the district court's rationale.

district court on fact-intensive determinations like this one, Coco Rico's argument fails.

### III. CONCLUSION

For all these reasons, we **reverse** the district court's orders (1) denying Universal's motion for a reduction of the contractual damages award and (2) denying Universal's motion to set aside the jury's consequential damages award; **affirm** the district court's order denying Coco Rico's motion for attorneys' fees and prejudgment interest; and **remand** for further proceedings consistent with this opinion. Each party shall bear its own costs.